**Laning R. DAVIDSON, M.D.,**
**Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF**
**MEDICINE, Respondent.**

**No. 87–1347.**

District of Columbia Court of Appeals.

Argued March 14, 1989.
Decided July 13, 1989.

Cary M. Feldman, with whom Douglas C. McAllister, Washington, D.C., was on the brief, for petitioner.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before ROGERS, Chief Judge, MACK, Associate Judge, and PRYOR, Senior Judge.

ROGERS, Chief Judge:

Petitioner Laning R. Davidson appeals from the decision of the District of Columbia Board of Medicine that he violated D.C. Code § 2–3305.14(a)(1), (a)(8) (1988 Repl.) by willfully making a false statement in his application for a renewal of a license to practice medicine in the District of Columbia. The Board reprimanded him and imposed a fine of $1250. Petitioner contends first, that the Board lacked jurisdiction over him because its notice of intent to revoke his license cited repealed statutes and because his license to practice medicine had expired before the Board held a hearing or issued its final decision; second, that he did not receive adequate notice of the factual basis of the charges against him; and third, that a critical finding of the Board, that he had received actual notice of the Florida Board of Medical Examiners' order denying his application for licensure, is unsupported by the record and requires reversal. We affirm.

I

Petitioner was licensed to practice medicine in the District of Columbia in 1980. On September 6, 1985, he submitted an application to renew his license for the 1985–86 license period. In response to the question in the application, "Has any state denied your application for license, suspended or revoked your license, or informed you of any pending charges not previously reported?" he answered "No," and his license was thereafter renewed through December 31, 1986.

On July 21, 1986, the District of Columbia Board of Medicine ("Board") issued a notice of proposed intent to revoke petitioner's license based on the charges that he had "committed professional misconduct, as defined in D.C.Code 1981 § 2–1326(d)(1), in that [he] used a false statement in connection with the District of Columbia licensing requirements," and because he had "violated D.C.Code 1981 § 2–1327(a)" by filing with the Board a statement when he "knew it was false and misleading." The notice also stated

On August 12, 1985, you knew that the Florida Board of Medical Examiners had denied your application for licensure as a physician because a copy of their January 9, 1985 Order denying your application for licensure by endorsement was mailed to you by certified mail on January 17, 1985.

The hearing before a panel of the Board which was originally scheduled for September 16, 1986, was continued several times, including once to permit petitioner to get further information about the Florida proceedings and another time to obtain new counsel. Petitioner denied having applied for licensure by endorsement in Florida, notwithstanding what appeared to be such an application with his signature on it, and denied having had a hearing before the Florida Board of Medical Examiners ("Florida Board"). He later changed his testimony to admit that he had been present at the hearing held on November 30 and December 1, 1984, before the Florida Board and stipulated to the authenticity of the transcript of that hearing. He denied, however, that the Florida Board had given him any indication of its decision on his application. The transcript revealed that when petitioner arrived late at the hearing, the Florida Board informed him that in his absence, based on materials presented, "[t]he Board voted to not allow you to have a license....," but that it would reopen his case since he had arrived. At the conclusion of the hearing the next day, the Florida Board informed petitioner, "Again, you don't have a license to practice in this State." A month and a half later, on January 17, 1985, the Florida Board sent a copy of its decision to petitioner by certified mail, but despite two notices left at his home, petitioner never picked up the mail, claiming later that he had been on a prolonged absence from his Florida home.

The Board issued its final decision on November 4, 1987, after considering petitioner's exceptions to its proposed decision. It found that because petitioner was

present at the Florida hearing, he knew or should have known that his Florida application had been denied and, therefore, that he made a willful misstatement in violation of D.C.Code § 2–3305.14(a)(1), (a)(8) (1987 Supp.),[1] when he stated in his application for license renewal in the District of Columbia that he had never had an application denied in another state. It also found that he had been meaningfully notified of the charges against him despite the erroneous citations to repealed statutes since the replacement statutes were substantively the same. The Board rejected petitioner's claim that the proceedings were moot because of the expiration of his license and concluded as a matter of law that it had jurisdiction to discipline him. The Board reprimanded petitioner and fined him $1250. D.C.Code §§ 2–3305.14(c)(4), (c)(5), 2–3310.9 (1988 Repl.).

## II

We first address petitioner's jurisdictional contentions.

### A.

■ Petitioner contends that the Board lacked jurisdiction to discipline him because its notice of intent to revoke his license erroneously cited statutes that had been repealed. The court recently rejected a similar claim, holding that in the absence of a showing of prejudice, an erroneous citation in a revocation notice to a statute repealed by the Revision Act will not divest the Board of jurisdiction to discipline an applicant where "[t]he same conduct was cause for discipline under both statutes and the same disciplinary sanctions existed for such conduct." *Mannan v. District of Columbia Bd. of Medicine*, 558 A.2d 329,

331–332 (D.C.1989) *(citing New Palm Gardens, Inc. v. Alcoholic Beverages Control Comm'n*, 11 Mass.App.Ct. 785, 786–790, 420 N.E.2d 8, 11–12 (1981) (no showing of prejudice where licensee aware of charges against it and commission referred to correct statute in its statement of reasons)).

In the instant case, the Board's notice referred to D.C.Code §§ 2–1326(d)(1),[2] 2–1327(a)[3] (1981), which were part of the statutory scheme replaced as of March 25, 1986, by the District of Columbia Health Occupations Revision Act of 1985, D.C. Law 6–99, 33 D.C. Reg. 729 (1986) ("Revision Act") (codified at D.C.Code § 2–3301.1 *et seq.* (1988 Repl.)). These provisions were carried forward in the Revision Act, which provides that the Board, which replaced the Commission on Licensure to Practice the Healing Art, is authorized to take disciplinary action against

> any applicant, licensee, or person permitted by this subchapter to practice the health occupation regulated by the board in the District who
>
> > (1) Fraudulently or deceptively obtains or attempts to obtain a license for an applicant or licensee ...
> >
> > (8) Willfully makes or files a false report or record in the practice of a health occupation.

D.C.Code § 2–3305.14(a)(1), (a)(8) (1988 Repl.). Furthermore, in its final decision, the Board cited the provisions of the Revision Act in addition to the repealed statutes. Accordingly, petitioner has failed to demonstrate that there is any "material difference" between the old and new statutory provisions or any prejudice resulting from this error. *Mannan, supra,* at 334 n. 14.

---

1. The provisions appearing in the 1987 Supplement to the D.C.Code (1981) are identical to those appearing in the 1988 Replacement volume.

2. D.C.Code § 2–1326(d)(1) (1981) provided:
 The Commission [on Licensure to Practice the Healing Art] shall impose a penalty or sanction only upon a present or former licensee whom the Commission finds has committed professional misconduct or incapacity, which means any of the following:

 (1) Use of any false, fraudulent or forged statement or document, or dishonest practice in connection with any of the licensing requirements....

3. D.C.Code § 2–1327(a) (1981) provided:
 No person shall file or attempt to file with the Commission any statement, diploma, certificate, credential, or other evidence when he knows, or when he might by reasonable diligence ascertain, that it is false and misleading.

### B.

Petitioner also contends that the Board lost jurisdiction over him after his license expired on December 31, 1986. Since he has not submitted a new application for renewal of license and has testified that he has no intention of doing so, he maintains that he is no longer "an applicant, licensee, or person permitted by this subchapter [the Revision Act] to practice the health occupation regulated by the board in the District." [4] D.C.Code § 2–3305.14(a) (1988 Repl.). He interprets the Revision Act to be more restrictive than the repealed statute, D.C.Code § 2–1326(d) (1981), which provided, in describing the penalties that could be imposed, that the Commission had authority over a "present or former licensee." While under the repealed statute the Commission might have authority over him as a "former licensee," petitioner contends that the language of the Revision Act, which omits the word "former," indicates that the Board no longer has authority over him.[5]

 The Board as a statutory creation has only those powers given to it by statute, *Stark v. Wickard,* 321 U.S. 288, 309, 64 S.Ct. 559, 570, 88 L.Ed. 733 (1944); *Office of Consumers' Counsel v. Federal Energy Reg. Comm'n,* 210 U.S.App.D.C. 315, 332 n. 32, 655 F.2d 1132, 1149 n. 32 (1980), and may not ignore the statute under which it operates. *Berger v. Bd. of Psychologist Examiners,* 172 U.S.App.D.C. 396, 402, 521 F.2d 1056, 1062 (1975). Absent express statutory or regulatory authority, a regulatory agency may not impose remedial measures. *Kuflom v. District of Columbia Bureau of Motor Ve-*

*hicle Servs.,* 543 A.2d 340, 346 (D.C.1988) (Terry, J., concurring) (authority to hold license revocation hearing). We hold, upon reviewing the plain language of the statute, the statutory scheme and the legislative history, that the Revision Act authorized the Board to discipline petitioner. *See In re Burton,* 472 A.2d 831, 838 (D.C.) (statutory scheme), *cert. denied,* 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *Citizens Ass'n of Georgetown v. Zoning Comm'n of the District of Columbia,* 392 A.2d 1027, 1033 (D.C.1978) (en banc); *Auger v. District of Columbia Bd. of Appeals and Review,* 477 A.2d 196, 210–11 (D.C. 1984) (*citing Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753–54 (D.C.1983) (en banc)).

The Revision Act is a comprehensive reorganization and modernization of the District's professional and business licensing laws. REPORT OF THE D.C. COUNCIL COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS ON BILL 6–317, at 2 (November 26, 1985) ("Legislative History"). Based on the recognition by the Council of the District of Columbia of the "fast-paced change in the science and economics of the health care professions" in the last decade, the legislation was designed to address modern advances and community needs with the paramount consideration of protecting the public interest. *Id.* at 7. The bill was the outgrowth of a study by the D.C. Law Revision Commission and was designed to eliminate problems that had arisen as a result of inconsistent and outdated provisions. *Id.* at 72–73. The Executive Branch of the District government testified in favor of the consolidation of statutory provi-

---

**4.** Petitioner also maintains, for the same reason, that this proceeding is moot. We disagree. The remedial purposes of the statute extend to assuring that the public is protected. The record demonstrates that petitioner has made several efforts to obtain licensure elsewhere. *See infra* p. 114.

**5.** Petitioner also maintains that this interpretation of the change makes clear that the regulation promulgated under the Revision Act by the Department of Consumer and Regulatory Affairs on which the Board relied in its final order is invalid as being contrary to the clear language of the statute. The regulation provides:

A board, in addition to taking other disciplinary action, may revoke the license of a health professional whose license has expired if the decision was based on conduct that occurred while the health professional was licensed.

17 DCMR § 4117.3; 34 D.C.Reg. 5887 (Sept. 11, 1987). Because of our holding, we need not reach the issue of whether the regulation, which the Department of Consumer and Regulatory Affairs promulgated during the pendency of the proceedings before the Board, would apply retroactively to proceedings commenced before its effective date.

sions, the improvement of standards of practice for the health professions and allied fields, and the uniform administration and discipline of the licensing programs. *Id.* at 74–75. In particular, it endorsed the provisions which strengthened enforcement. *Id.* at 9.

A review of the Revision Act makes clear that the Council intended to strengthen enforcement of its licensing laws. The Act modernized standards and enforcement procedures and authorized the various boards governing health occupations to issue cease and desist orders and provided for the voluntary surrender of a license to encourage impaired professionals to seek treatment. *Id.* at 47; D.C.Code §§ 2–3305.-14(c)(8), 2–3305.16, 2–3305.18 (1988 Repl.). Contrary to any suggestion of a break with the past, the transition provisions in the Act provided for existing rules and regulations to remain in effect until new ones could be promulgated and for the members of existing boards to serve out their terms on the successor boards. Legislative History at 59; D.C.Code §§ 2–3311.2, 2–3311.3 (1988 Repl.). The relevant substantive provisions defining unprofessional acts and penalties authorized to be imposed were carried forward in the Revision Act, and actions commenced under the former statute and pending at the time the Revision Act took effect were not to abate. D.C. Code § 2–3311.3 (1988 Repl.). These are not the actions of a legislature intending to weaken the authority of licensing boards to discipline persons whose conduct violates the statute that the boards are to enforce. Nor are they consistent with petitioner's contention that the Board did not have jurisdiction to discipline him once his license expired. Inclusion of the type of amnesty provision urged by petitioner would hardly have been consistent with the Council's enactment of the Revision Act.

Petitioner's reliance on the absence of language in the Revision Act that was a part of the penalty provision of the prior law is misplaced. The prior law provided that "[t]he Commission [on the Healing Art] shall impose a penalty or sanction only upon a *present or former* licensee whom the Commission finds has committed professional misconduct or incapacity...." D.C.Code § 2–1326(d) (1981) (emphasis added); *see also* D.C.Code § 2–1326(a)(10) (1981). As we understand petitioner's argument, the absence of similar language in the Revision Act demonstrates the intent of the Council to deprive the Board of jurisdiction to impose discipline on a person whose license has expired even though the alleged unprofessional conduct occurred while the license was still in effect.[6] This argument goes too far. Since the repealed statute referred not only to "former licensees" but also to "present licensees," under petitioner's argument, the Board would be without authority to impose discipline on former and present licensees. We will not construe a statute to reach an unreasonable result. *Berkley v. United States,* 370 A.2d 1331, 1332 (D.C.1977). Moreover, nothing in the Revision Act or its legislative history indicates that "licensee" was intended to refer only to someone who is licensed at the time the Board issues its final decision or order.

Other provisions in the Revision Act support this conclusion. Thus, D.C.Code § 2–3305.14(a), provides that the Board "may take 1 or more disciplinary actions provided in subsection (c) of this section against any applicant, licensee, or person permitted by this subchapter to practice the health occupation regulated by the board in the District who [is found to have done certain acts set forth in the statute]." The Board did not revoke petitioner's license, and hence he is a "person permitted ... to practice" provided he periodically renews his license. That is, upon renewal, without further comprehensive examination, petitioner can practice his profession.

---

6. Petitioner relies on a canon of statutory construction for his argument that the replacement of D.C.Code § 2–1326 (1981) by § 2–3305.14 under the Revision Act makes clear that the Board does not have jurisdiction to discipline a person whose license has expired. *See* 1A J. Suther-

land, *Statutes and Statutory Construction* § 23.30 (4th ed. 1985) (a change in a statute indicates that the legislature "intended to change the original act by creating a new right or withdrawing an existing one").

No reason has been brought to our attention why the phrase "permitted by this subchapter" must necessarily be interpreted to preclude action by the Board after a license has expired. *See Peoples Drug Stores, supra,* 470 A.2d at 755. Nothing in the plain language of § 2–3305.14(a) nor the legislative history precludes the Board from having jurisdiction to discipline former licensees for misconduct occurring while licensed where the Board initiates action during the life of the license. The Revision Act also authorizes discipline to be imposed after a voluntary surrender of a license, D.C.Code § 2–3305.17(c) (1988 Repl.). A person who voluntarily allows his license to expire accomplishes the same result.

Moreover, part of petitioner's argument is disingenuous. Petitioner's license did not expire until December 31, 1986. The hearing was scheduled for October 9, 1986, and was only continued so petitioner could present evidence to rebut the government's documentary evidence of a Florida application for licensure by endorsement, signed by petitioner, and the transcript of the Florida proceeding. Another continuance was granted to permit petitioner to retain new counsel. *Cf. In re Williams,* 513 A.2d 793, 796 (D.C.1986) (reversing dismissal for reason of undue delay in prosecuting attorney disciplinary charges).

In short, to accept petitioner's contention would require us to find that the D.C. Council, in enacting the Revision Act, intended to undermine the dual purposes of licensure: to protect the licensee and the public. *See Mannan, supra,* at 333; *Sherman v. Commission on Licensure to Practice Medicine,* 407 A.2d 595, 601 (D.C. 1979) (license revocation). Not only does petitioner not dispute that he was subject to the jurisdiction of the Board at the time he committed the alleged unprofessional conduct and at the time the Board issued

its intent to revoke his license, but he is a classic illustration of why the expiration of a license cannot be grounds for stripping the Board of jurisdiction to act. Petitioner has not limited his efforts to obtain licensure to the District of Columbia. Yet he seeks to defeat the jurisdiction of the Board, as well as the Florida medical licensure body, by allowing his license to expire in the District and by attempting to withdraw his application for licensure in Florida.[7] The remedial scheme underlying licensure statutes includes not only preventing that individual from practicing medicine in the jurisdiction in which there is an application pending, but also alerting other jurisdictions of a person's conduct. *See* 42 U.S.C. §§ 11132, 11134 (1988 Supp.) (effective November 4, 1987) (requiring state boards of medicine to report disciplinary actions to central national data bank). Obviously, these purposes would be defeated if a person otherwise subject to the Board's jurisdiction could evade discipline by voluntarily surrendering his license under D.C. Code § 2–3305.17(c) or allowing the license to expire. *See Harrison v. J.H. Marshall & Assocs., Inc.,* 271 A.2d 404, 406 (D.C. 1970) (definitions in regulatory statute to prevent fraud generally read broadly).

### III

■ Petitioner further contends that he received inadequate notice of the factual basis of the Board's charges against him because the Board based its charges on the purported receipt of a certified letter rather than on his actual knowledge of the Florida Board's order. The record is replete with evidence that petitioner had an "adequate opportunity to prepare and present" his position to the Board, and he can demonstrate no prejudice from the original deficient notice. *Watergate Improvement Assocs. v. Public Serv.*

---

**7.** In support of his contention that he did not know at the time he filed the renewal application in the District of Columbia that his application in Florida had been denied, petitioner maintained that he was confused about the state of the Florida proceedings since he had written a letter in 1984 withdrawing his Florida application. See note 10, *infra.*

Petitioner is also challenging the validity of the Florida Board's findings. However, whether or not the Florida Board's findings are ultimately upheld does not vindicate petitioner's misconduct in willfully filing a false report to the Board in the District of Columbia.

*Comm'n*, 326 A.2d 778, 786 (D.C.1974). The notice informed him of the grounds for the Board's charges so he knew that the primary focus of the hearing would be whether he had been denied a license in Florida. That his attorney did not see the copy of the Florida transcript in one of the Board's files is unfortunate, but petitioner can show no prejudice. Indeed, he does not even suggest how he would have been in a better position to present his position to the Board. Nor does he allege that the Board told his counsel that the transcript did not exist or that it subsequently denied him an opportunity to see a copy. His reliance on *Babazadeh v. District of Columbia Hackers' License Appeal Bd.*, 390 A.2d 1004 (D.C.1978), in which the Board denied a *pro se* petitioner an opportunity to examine his files and refused to identify the complainant, is plainly misplaced.[8] Petitioner had notice that the charges against him involved his giving a false statement when he answered that he had never been denied a license in another state. He also had notice that the Florida proceedings would be the primary focus of the inquiry. That he did not know that the D.C. Board had the transcript of the Florida proceedings did not deprive him of "fair and adequate notice."[9] *See Ridge v. Police & Firefighters Retirement Bd.*, 511 A.2d 418, 424 (D.C.1986) (*quoting Carroll v. District of Columbia Dept. of Employment Servs.*, 487 A.2d 622, 623 (D.C.1985)). Petitioner was granted a continuance so he could prepare his defense after the prosecutor introduced the transcript of the Florida proceeding.[10]

## IV

Finally, petitioner contends that the Board's finding that he had received actual notice of the Florida Board's decision was clearly erroneous. He argues that there was uncontradicted evidence that he never received a copy of the Florida Board's order. He relies on his testimony and on a return receipt from the Florida Board's files showing non-delivery of the certified mail envelope which was introduced in evidence.

In reviewing agency findings, the court will affirm the agency's decision if it is "supported by and in accordance with reliable, probative and substantial evidence in the record, and the agency's conclusions flow rationally from its findings." *Becker v. District of Columbia Dept. of Consumer and Regulatory Affairs*, 518 A.2d 93, 94 (D.C.1986) (*citing Saah v. District of Columbia Bd. of Zoning Adjustment*, 433 A.2d 1114, 1116 (D.C.1981)). The Board found that petitioner "was served with the Florida Board's Order denying him application on January 17, 1985." Petitioner concedes that a certificate of service gives rise to the presumption that service has occurred, but he contends that the presumption was rebutted by his testimony that he had not in fact received the Florida Order. What he fails to appreciate, however, is that there was sufficient evidence on which the Board could find that he knew or should have known of the denial of his licensure application in Florida prior to filing his application in the District of Columbia.

▪ Generally, service is complete upon mailing. 4A Wright & Miller, *Federal Practice and Procedure*, § 1148 at 430–31 (1987); *Carter v. McGowan*, 524 F.Supp. 1119, 1121 (D.Nev.1981) (mailing of notice of deposition to plaintiff at last known ad-

---

**8.** In that case the central issue at the hearing was whether the taxi driver had picked up the complainant passenger before rush hour fares were in effect. Without the complainant's name he was unable to locate documentary evidence to refute the complainant's testimony.

**9.** There is no basis for imputing bad faith to the Board's exclusion of the Florida transcript from the files which petitioner's counsel examined. The Board's executive director explained that the transcript had been put in a different file on petitioner. Indeed, the prosecutor apparently was unaware of the existence of the transcript until the morning of the hearing. She did not rely on the transcript until after petitioner had testified that he had not received the Florida order sent to him by certified mail.

**10.** Petitioner argues that uncertainty arose because he had withdrawn his application for a Florida license in 1984; however, that is irrelevant since the hearing before the Florida Board was in 1985.

dress constituted service and non-receipt did not affect its validity); *Rifkin v. U.S. Lines*, 24 F.R.D. 122, 123 (S.D.N.Y.1959) ("Service by mail is complete upon mailing even though it is not received"). *But see Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666, 1667, 48 L.Ed.2d 176 (1976) (mailing does not constitute notice). Regardless of whether mailing constitutes service, however, there was uncontradicted evidence that petitioner was present before the Florida Board when it told him that it was denying his application for a license. The written notice which he did not receive would only have served to confirm what he already knew. Petitioner has failed, therefore, to demonstrate that an erroneous finding by the Board that he was served with the Florida order would have materially affected the Board's decision. *See Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights*, 527 A.2d 282 (D.C.1987) (citing *Arthur v. District of Columbia Nurses' Examining Bd.*, 459 A.2d 141, 146 (D.C. 1983)).

Accordingly, the decision of the Board is affirmed.[11]

*Affirmed.*

**11.** Petitioner's contention that the Board used gratuitous, vituperative and insulting language in its findings and order is without merit. The Board has broad discretion to reprimand someone who has violated one of the statutes or regulations which it has been charged with enforcing. The Board acted well within its statutory mandate to regulate the medical profession and protect the public from misconduct. That it chose to express itself forcefully is not error.