**Joseph S. SALAMA, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF MEDICINE, Respondent.**

No. 87–1394.

District of Columbia Court of Appeals.

Argued April 18, 1990.

Decided July 18, 1990.

---

Ronald A. Goodbread, with whom Frances M. D'Antuono and Robert C. Gill were on the brief, for petitioner.

Susan S. McDonald, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before FERREN and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

FERREN, Associate Judge:

 Salama appeals a decision of the District of Columbia Board of Medicine revoking his license to practice medicine in the District of Columbia. Salama argues, among other things, that the Board lacked

jurisdiction to hear his case, that he was denied due process throughout the proceedings, and that, in any event, the Board abused its discretion in revoking his license. We conclude that although the Board had jurisdiction to hear all three of the charges on which it based its revocation order, the evidence with respect to the second charge does not support the Board's conclusion that Salama's conduct amounted to misconduct. Because we cannot be sure the Board would have revoked Salama's license without reliance on all three charges, we must reverse and remand for further proceedings.[1]

## I.

This is a proceeding for reciprocal discipline; the Board's revocation of Salama's license was attributable to revocation of his license to practice medicine in Virginia.[2] Salama was convicted in the Circuit Court of Fairfax County of raping a fourteen-year-old patient and of unlawfully prescribing quaalude (methaqualone) for her. He

was sentenced on March 24, 1978 to consecutive prison terms totaling seven years. In 1979, however, he was released on parole, which he completed in 1981.

On July 26, 1978, the Virginia State Board of Medicine (the Virginia Board) had suspended Salama's license to practice,[3] and on December 21, 1979, it had revoked his license. But on December 4, 1981, in response to a petition for reinstatement, the Virginia Board restored Salama's license with the following restrictions:

1) That he confine his medical activities to a residency program approved by the Board;

2) That he be allowed to prescribe controlled substances *only* to patients confined within a hospital and that he not be permitted to prescribe controlled substances to out patients at the hospital; [emphasis in original]

3) That he be seen by the Psychiatric Advisory Committee of the State Board of Medicine in June, 1982, at which time

---

**1.** We find no merit in Salama's other contentions. Salama contends that under the repealed statute on Healing Arts Practice, D.C.Code §§ 2-1301 to -1363 (1981), on which the Board of Medicine erroneously relied, the Board was required to impose discipline when various actions were proved, *see id.* § 2-1326(d), whereas under the applicable District of Columbia Health Occupations Revision Act of 1985, D.C. Code §§ 2-3301.1 to -3312.1 (1988), the Board is permitted, but not required, to impose discipline in such instances, *see id.* § 2-3305.14(a). It follows, he argues, that the Board felt compelled—erroneously—to impose discipline because it was functioning under the nondiscretionary mind set of the repealed statute. This argument fails because we do not read § 2-1326(d) of the repealed statute to withhold from the Board any more discretion over discipline than the Board has under the Revision Act, § 2-3305.14(c).

Salama also argues that the Board's failure to issue its decision within the time prescribed by statute, *see* D.C.Code § 2-3305.19(h), was plain error. As we stated in *Mannan v. District of Columbia Bd. of Medicine,* 558 A.2d 329, 334 (D.C.1989), however, this directive appears more "precatory" than "jurisdictional." In any event, Salama was not prejudiced by the delay, for during that period he continued to practice medicine in the District of Columbia.

Salama's contention that he was denied effective assistance of counsel also fails. As the government properly notes, Salama had a prop-

erty interest in his license, not a liberty interest. *Sherman v. Commission on Licensure to Practice the Healing Art,* 407 A.2d 595, 601 (D.C.1979). Accordingly, he had no constitutional right to counsel.

Salama also argues that the Board's denial of continuances deprived him of an adequate opportunity to be heard. The record belies this contention. Nor can Salama succeed in arguing that the Board's findings of fact and conclusions of law concerning Charges I and III lack evidentiary support or fail to flow rationally from the facts. Finally, the Board's action was not barred by laches.

**2.** D.C.Code § 2-3305.14(a)(3) (1988) provides in relevant part:

(a) Each board ... may take 1 or more of the disciplinary actions provided in subsection (c) of this section against any ... licensee ... who:

(3) Is disciplined by a licensing or disciplinary authority or convicted or disciplined by a court of any jurisdiction for conduct that would be grounds for disciplinary action under this section[.]

**3.** July 26, 1978 is the date on the actual suspension order issued by the Virginia Board. On various subsequent orders, the Virginia Board cites either April 28, 1978 or August 28, 1978 as the date it suspended Salama. No explanation of this discrepancy appears in the record.

he will undergo psychological testing; and

4) That he appear before the Board at its regularly scheduled meeting in July, 1982, for re-evaluation of his licensure status.

Following a re-evaluation of Salama's situation in July 1982, the Virginia Board voted unanimously on October 27, 1982,

that the restoration of the license of Joseph S. Salama, M.D. to practice medicine in the Commonwealth of Virginia be withdrawn due to the failure of Dr. Salama to be enrolled in a residency program approved by the Board as contemplated by its Order of December [4], 1981.

Salama, however, still retained a license to practice medicine in the District of Columbia, which he had obtained in 1973. In June 1986, Salama received a notice of the District Board's intent to revoke his license. The Board detailed three "charges," including "specifications" of the professional misconduct attributable to each, as well as one or more statutory bases for each charge:

*Charge I:*

You have committed professional misconduct as defined in D.C.Code 1981, § 2–1326(d)(2)(C) in that you were convicted of a misdemeanor and a felony in the Commonwealth of Virginia and which, if committed within the District of Columbia, would both be felonies under District of Columbia law. Said crimes have a direct bearing on whether or not you should be entrusted to serve the public as a licensed health care provider.

*Specification A:*

On or about March 24, 1978, you were convicted in the Circuit Court of Fairfax County, Virginia before the Honorable Richard Jamborsky of a violation of Section 18.2–63 of the Virginia Code, statutory rape, and a violation of Section 18.2–260 of the Virginia Code, unlawfully prescribing a controlled substance. You were specifically convicted of having sexual intercourse with a fourteen-year old child on or about October 20, 1976; and on that

same date, of unlawfully prescribing quaalude (methaqualone).

*Specification B:*

On March 24, 1978, the Honorable Richard J. Jamborsky sentenced you to serve six years in the Penitentiary House of Virginia on the charge of statutory rape and twelve months, to be served consecutively in the Fairfax County Jail, on the charge of unlawfully prescribing quaalude.

*Charge II:*

You have committed professional misconduct as defined in D.C.Code 1981, § 2–1326(d)(13)(A) in that you have committed acts which have resulted in disciplinary action against you by the Virginia State Board of Medicine (hereinafter "the Virginia Board") which, if committed in the District of Columbia, would be professional misconduct as described in D.C.Code 1981, § 2–1326(d)(12) in that you practiced the healing art in violation of an effective order of the Virginia Board.

*Specification A:*

The Virginia State Board of Medicine suspended your medical license to practice on [July 26], 1978 based on receipt of copies of your conviction for statutory rape and unlawfully prescribing quaalude (methaqualone).

On December 21, 1979 the Virginia Board revoked your license. The Virginia Board, on [December 4,] 1981, voted to reinstate your license with four conditions. One of these conditions required you to confine your medical activities to a residency program approved by the Virginia Board. On July 23, 1982, when you appeared before the Virginia Board for reevaluation, the Board voted to reinstate the revocation of your license due to your failure to enroll in a residency program. The revocation became effective October 27, 1982.

*Charge III:*

You committed professional misconduct as defined in D.C.Code 1981, § 2–1326(d)(15) in that you failed to

conform to the standards of acceptable and prevailing healing arts practice.

*Specification A:*

On or about October 20, 1976, you unlawfully prescribed quaalude (methaqualone) not for a legitimate medical use, but in violation of Section 18.-2-[260] of the Virginia Code.

The matter came before the Board for hearing on September 12, 1986. The government presented only documentary evidence, consisting of copies of the Virginia indictment, various orders issued by the Virginia Board, and the notice of the District's intent to revoke Salama's license. Salama testified on his own behalf that, during the period when the Virginia Board had reinstated his license, he had obtained employment in a residency program at Georgetown University Hospital as the Virginia Board had required. When Georgetown learned what had "happened in Virginia," however, Salama's residency was terminated. Salama then testified that sometime after his license had been revoked in Virginia, he began practicing medicine part-time in a private office in Southeast Washington. Mrs. Salama and three other witnesses, at least two of whom were Salama's current patients, also testified on his behalf.

The District Board issued its decision revoking Salama's license on July 1, 1987. The Board based its decision on several findings of fact and the following three conclusions of law:

1. Respondent has been convicted of crimes:

 a. Which involve moral turpitude [and] have a direct bearing on whether he should be entrusted to serve the public as a licensed health care provider[;] [case citations omitted]

 b. One of which is a felony (statutory rape) and the other a misdemeanor (un-

lawfully prescribing a controlled substance) under Virginia law; and

 c. One of which would have constituted a felony (statutory rape) and the other a misdemeanor (unlawful[ly] prescribing a controlled substance) under District law if committed in the District. D.C.Code § 2–1326(d)(2)(C) (1981).

2. Respondent has been disciplined by the Virginia Board based on his conviction in Virginia of two crimes and on his practice of the healing art in violation of an order of the Virginia Board. These acts, if committed in the District, would constitute professional misconduct as defined in D.C.Code §§ 2–1326(d)(2)(C) and 2–1326(d)(12) (1981). D.C.Code § 2–1326(d)(13) (1981).

3. Respondent has committed professional misconduct within the meaning of D.C.Code § 2–1326(d) (1981).

Salama appeals this decision.

## II.

The first issue is the Board's jurisdiction to hear Salama's case. The Board derives authority over disciplinary matters from the District of Columbia Health Occupations Revision Act of 1985, D.C.Code §§ 2–3301.1 to –3312.1 (1988) (Revision Act). Effective March 25, 1986, the Revision Act replaced statutory provisions governing the Healing Arts Practice, D.C.Code §§ 2–1301 to –1363 (1981). Accordingly, unless a disciplinary proceeding had been "lawfully commenced" against a physician under the Healing Arts Practice statute before March 25, 1986, the Revision Act governs the proceeding. *See* D.C.Code § 2–3311.3(b) (1988). The Board, however, cited only provisions of the repealed statute in the charges and specifications presented against Salama.[4]

---

4. The District argues that, because Salama's misconduct took place before the Revision Act was enacted, the repealed statute should apply to Salama's case "by analogy" to D.C.Code § 2–3311.3(b) (1988) ("No disciplinary action against a health professional ... lawfully commenced shall abate solely by reason of the taking effect of any provision of this chapter....").

The language of this provision is inapplicable to this case, which "lawfully commenced" on June 24, 1986, three months *after* the new act became effective. We perceive no basis for the District's argument creating a rule of law "by analogy" that contradicts the plain language of the statute.

Salama argues on appeal that the Board had no jurisdiction to hear his case because the notice he received cited the repealed statutory provisions. This court has twice considered and rejected such an argument. *Davidson v. District of Columbia Bd. of Medicine*, 562 A.2d 109 (D.C.1989); *Mannan v. District of Columbia Bd. of Medicine*, 558 A.2d 329 (D.C. 1989). In *Davidson* we stated:

> [I]n the absence of a showing of prejudice, an erroneous citation in a revocation notice to a statute repealed by the Revision Act will not divest the Board of jurisdiction to discipline an applicant where "[t]he same conduct was cause for discipline under both statutes and the same disciplinary sanctions existed for such conduct."

562 A.2d at 111 (quoting *Mannan*, 558 A.2d at 333). The Board's first and third charges against Salama easily survive under this standard.

### A.

We are satisfied that Salama was not prejudiced by the miscitation in Charge I because the conduct specified in Charge I—the crimes for which Salama had been convicted in Virginia—was cause for discipline under both statutes and the same disciplinary sanction existed for such conduct under both statutes. The repealed statute, D.C.Code § 2–1326(d)(2)(C) (1981), cited in Charge I, defined as sanctionable "misconduct or incapacity":

> [c]onviction for a crime which has a direct bearing on whether or not the licensee should be entrusted to serve the public as a licensed health care provider, and which is a felony or misdemeanor under ... [t]he law of another jurisdiction and which, if committed within the District of Columbia, would have constituted a felony or misdemeanor under District of Columbia law.

Similarly, the Revision Act, D.C.Code § 2–3305.14(a)(4) (1988), permits disciplinary action against a licensee who "[h]as been convicted in any jurisdiction of any crime involving moral turpitude, if the offense bears directly on the fitness of the individual to be licensed." It follows that, having received adequate notice of a charge under repealed § 2–1326(d)(2)(C), including specification of the crimes for which he had been convicted, Salama received adequate notice of a Revision Act violation under § 2–3305.14(a)(4). He has failed to show any prejudice whatsoever from the incorrect statutory citation. *See Davidson*, 562 A.2d at 111; *Mannan*, 558 A.2d at 333. The Board, therefore, had jurisdiction to pursue Charge I.

### B.

Charge III refers to the conduct underlying one of the crimes for which Salama was convicted: unlawfully prescribing quaalude. The Board's "specifications" put Salama on ample notice of the charge against him. As in Charge I, the conduct specified was cause for discipline not only under the repealed provision cited by the Board, D.C. Code § 2–1326(d)(15) (1981) ("[f]ailure to conform to the standards of acceptable and prevailing healing arts practice") but also—indeed, even more explicitly—under the applicable provision of the Revision Act, D.C. Code § 2–3305.14(a)(19) (1988) (licensee who "[p]rescribes, dispenses, or administers drugs when not authorized to do so"). The Board, therefore, had jurisdiction over Charge III as well.

### C.

We turn to Charge II. The Board paraphrased and cited repealed D.C.Code § 2–1326(d)(12) (1981)—"[p]racticing the healing art in violation of an effective order of the Commission"—to define the misconduct. The "specifications" then described the Virginia Board's suspension, revocation, reinstatement, and second revocation of Salama's Virginia license attributable to his "failure to enroll in a residency program." Accordingly, the District of Columbia Board equated Salama's failure to remain in the Georgetown residency program with a "violation of an effective order" of the Virginia Board. *Id.*

The first question, then, in considering reciprocal discipline under D.C.Code § 2–3305.14(a)(3) (1988), see *supra* note 2,

for the conduct cited in Charge II is whether the Revision Act has a provision like § 2–1326(d)(12) of the repealed statute that makes violation of a Board order a disciplinary offense. The short answer is "no"; language of the sort used in § 2–1326(d)(12) is altogether absent from the Revision Act. On the other hand, one provision of the Revision Act arguably covers the type of conduct underlying Salama's alleged violation of the Virginia Board order. The Revision Act provides for discipline if a physician "[p]erforms, offers, or attempts to perform services beyond the scope of those authorized by the license held by the health professional." [5] D.C. Code § 2–3305.14(a)(21) (1988). Thus, although the Revision Act has no contempt-like provision corresponding to the repealed provision authorizing a disciplinary sanction for violation of any Board order as such, the Revision Act arguably does proscribe the type of conduct that allegedly violated the Virginia Board order in this case. More specifically, "failure to enroll in a residency program" (the alleged violation of the Virginia Board order) could be understood to imply that Salama was practicing medicine "beyond the scope" of his restricted license within the meaning of § 2–3305.14(a)(21) of the Revision Act.

The premise underlying Salama's jurisdictional argument, derived from *Davidson* and *Mannan*, is that the Board does not have subject matter jurisdiction over a charge that cites only to a repealed statute (1) if the alleged violation is not proscribed under the successor statute or (2) even if proscribed, the alleged violation, because of the miscitation, cannot be found under the successor statute with sufficient certainty to say that adequate notice has been given. We agree with this legal premise, but we cannot say that the alleged violation of the repealed statute, § 2–1326(d)(12), as elaborated in the specifications of Charge II, is not sufficient notice of a violation of § 2–3305.14(a)(21) of the new statute: "perform[ing] services beyond the scope of

those authorized" by the physician's license. Thus, we cannot say the Board lacked jurisdiction over the subject matter of Charge II; because we have discerned no prejudice to Salama from the miscitation, the "erroneous citation in [the] revocation notice to a statute repealed by the Revision Act will not divest the Board of jurisdiction to discipline" Salama. *Davidson*, 562 A.2d at 111.

■ Salama, however, does have a meritorious argument: even if proved, the conduct specified under Charge II is not misconduct under *either* the old *or* the new statute. We focus on the new statute because that statute governs Salama's case. As this court stated in *Citizens Ass'n of Georgetown, Inc. v. District of Columbia Zoning Comm'n*, 402 A.2d 36, 42 (D.C. 1979):

> [T]he DCAPA "substantial evidence" test requires (1) the agency to make written findings of "basic facts" on all material contested issues; (2) these findings, taken together, must rationally lead to conclusions of law ... which, under the governing statute, are legally sufficient to support the agency's decision; and (3) each basic finding must be supported by evidence sufficient to convince reasonable minds of its adequacy.

The Board's decision must meet these requirements, but it fails here on the second ground.

The Board's finding that the Virginia Board revoked Salama's license because he "failed to comply with the terms of the Virginia Board's December 4, 1981 order" —presumably by failing "to be enrolled in a residency program approved by the [Virginia] Board"—is not supported by the evidence. The evidence indicates that the Virginia Board revoked Salama's license the second time because he failed to remain enrolled in a residency program which satisfied its restrictions on his reinstatement. There is no record evidence, however, that, once he left the Georgetown residency program, Salama continued to practice medi-

---

**5.** In addition, D.C.Code § 2–3305.14(a)(18) (1988) authorizes discipline if a physician "[v]iolates any of the conditions of an agreement between the licensee and the board to voluntarily limit the practice of the licensee made pursuant to § 2–3305.18 [entitled 'voluntary limitation or surrender of license by impaired health professional']."

cine in Virginia or that he otherwise violated an order of the Virginia Board. As far as we can tell, therefore, Salama merely failed to achieve a status that the Virginia Board required him to achieve if he were to resume the practice of medicine in Virginia. Accordingly, the District Board's finding that Salama was disciplined in Virginia for "practic[ing] the healing art in violation of an effective order of the Virginia Board" is unsupported by the evidence. Thus, there is no support for a conclusion that, in failing to remain enrolled in a residency program, Salama performed services beyond the scope of his Virginia license, in violation of D.C.Code § 2–3305.14(a)(21) (1988). While Salama did practice in the District after the Virginia Board revoked his license, he had a valid, unrestricted District license to practice here at the time. Based on the record, therefore, we conclude that to the extent the Board's second and third conclusions of law are based on Charge II, they do not flow rationally from the facts and thus are not supported by the required "substantial evidence." *See* D.C.Code § 1–1510(a)(3)(E) (1987); *Citizens Ass'n of Georgetown,* 402 A.2d at 42.

### III.

█ There remains the question whether this failure to establish Charge II was prejudicial error, *see* D.C.Code § 1–1510(b). "[R]eversal and remand is required only if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed." *Arthur v. District of Columbia Nurses' Examining Bd.,* 459 A.2d 141, 146 (D.C.1983). It is likely that the Board would have revoked Salama's license solely by reference to the Virginia crimes.[6] On the other hand, the Board did offer three bases for revocation, and unless we can be sure that the Board would have based its ruling on a lesser number, we cannot affirm.

We cannot assuredly say Charge II was unnecessary to the Board's ruling for three reasons. First, it was different in kind from Charges I and III. Whereas Charges

I and III essentially rested on the same criminal conduct, Charge II was premised, in effect, on contempt of the Board. Second, the Virginia Board was willing to reinstate Salama, despite his criminal conduct, conditioned on compliance with restrictions. We cannot assume that the District Board, therefore, any more than the Virginia Board, would bar Salama from practice based on the criminal conduct alone. Finally, nowhere in the Board's order is there any reference whatsoever to the Revision Act under which it was required to rule. We would be uneasy affirming on the ground of no prejudicial error when the Board has shown no evidence of addressing any issue under the applicable statute. In contrast, in its final decisions in both *Davidson* and *Mannan,* the Board referenced the correct statute: the Revision Act. *See Davidson,* 562 A.2d at 111; *Mannan,* 558 A.2d at 333.

Accordingly, we reverse and remand for further proceedings without prejudice to the Board's entering an order to preserve the status quo pending resolution of the case on remand.

*So ordered.*

---

6. It is interesting to note, solely for purposes of comparison, that a lawyer will be disbarred for life in the District of Columbia after conviction of a crime involving moral turpitude. *See* D.C. Code § 11–2503(a) (1989); *In re Kerr,* 424 A.2d 94, 97 (D.C.1980) (en banc) (disbarment "permanent" absent a pardon).