Oparaugo UDEBIUWA, Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF MEDICINE, Respondent.**

No. 01–AA–1134.

District of Columbia Court of Appeals.

Argued Feb. 20, 2003.
Decided March 13, 2003.

John T. Riely for petitioner.

William J. Earl, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before TERRY, SCHWELB and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Dr. Oparaugo Udebiuwa appeals from the decision of the D.C. Board of Medicine to discipline him for engaging in an inappropriate social and sexual relationship with a former psychiatric patient. *See* D.C.Code § 3–1205.14(a)(26) & (28) (2001). The Board found that this misconduct was established conclusively by the $2.3 million judgment that had been rendered against Dr. Udebiuwa and Howard University Hospital (HUH) in the patient's malpractice action in D.C. Superior Court. Dr.

Udebiuwa's principal contention is that the Board of Medicine erred in according preclusive effect to the malpractice judgment because the parties subsequently settled the case for $1.5 million and sought to have the judgment vacated. This contention fails for the simple reason that, notwithstanding the parties' intentions, the judgment was not vacated. We affirm the Board's order.

■ The post-trial settlement of the malpractice action mooted the litigation. For that reason the settlement required the dismissal of the pending appeal. *See Milar Elevator Co. v. District of Columbia Dep't of Employment Servs.*, 704 A.2d 291, 292–93 (D.C.1997). But though the settlement satisfied the judgment against Dr. Udebiuwa and (HUH), it did not eliminate that judgment. The parties apparently sought a vacatur by filing a praecipe in the trial court which stated that "[a]s a part of the settlement agreement and release, the parties agree that the judgment entered against [ (HUH) and Dr. Udebiuwa] is to be vacated." "We ask for this," stated the attorney signatories to the praecipe. They asked for it, but they did not get it. The trial court, which took no action at all in response to the praecipe, did not grant the vacatur. Thereafter the parties did nothing further. They did not move in the trial court to vacate the judgment pursuant to Super. Ct. Civ. R. 60(b)(5), which permits motions for relief from a final judgment on the ground that the judgment has been satisfied, released or discharged.[1] But even if the praecipe is deemed equivalent to a Rule 60(b) motion, the mere filing of a motion under subdivision (b) "does not affect the finality of a judgment or suspend its operation." Super. Ct. Civ. R. 60(b).

■ Nor, it should be clear, did their settlement entitle the parties to have the trial court vacate the judgment upon their request.[2] The general rule is to the contrary. Although this court has not spoken on the issue before now, the Supreme Court has held that "mootness by reason of settlement does not justify vacatur of a judgment," even if the settlement agreement specifically provides for vacatur as a condition of the deal. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Vacatur, the Court said, is an extraordinary remedy that is reserved for exceptional situations, as where the losing party is frustrated from obtaining appellate review because the judgment is rendered moot by circumstances beyond that party's control. "Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Id.* at 25, 115 S.Ct. 386. In such a case, the equities ordinarily disfavor vacatur even if the losing party bargained for it, because the public interest typically outweighs the private interests involved. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest

---

1. Nor did the parties seek equivalent relief in this court while the appeal was still pending.

2. In view of Dr. Udebiuwa's argument in his brief that the parties to the malpractice action had a legal right to vacate the judgment, and that they effectively exercised that right by filing a praecipe which the trial court did not disturb and which therefore "remains the law of the case," we do not agree with our concurring colleague's view that the balance of our discussion of the vacatur issue in this opinion is "purely advisory and not necessary to the court's holding." *Post* at 165.

would be served by a vacatur." *Id.* at 26, 115 S.Ct. 386 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* 510 U.S. 27, 40, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993) (Stevens, J., dissenting)). The public interest also is served by encouraging parties to settle before rather than after trial, by deterring those litigants who "may think it worthwhile to roll the dice rather than settle in the [trial] court ... if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur." *Bonner Mall,* 513 U.S. at 28, 115 S.Ct. 386.

As is illustrated by the present case, one important reason that the judgment of a court is "valuable to the legal community as a whole," *id.* at 26, 115 S.Ct. 386 is that it may have "preclusive benefits for third parties" under the doctrine of offensive nonmutual collateral estoppel. *In re Mem'l Hosp. of Iowa County, Inc.,* 862 F.2d 1299, 1302 (7th Cir.1988). "If parties want to avoid stare decisis and preclusive effects, they need only settle before the [trial] court renders a decision." *Id.* We appreciate that the recipient of an otherwise satisfactory post-trial settlement offer that is conditioned on vacating the judgment may be quite amenable to that condition, and will feel aggrieved if a desirable settlement is stymied by the rule against routine grants of vacatur in such circumstances. "The interests of litigants in general, however, lie with the orderly operation of a system of justice, one in which the conclusions of litigation are recorded and thus preserved for the future, one in which slightly higher costs in today's case may reduce the trouble encountered by litigants and judges tomorrow. Judges must have at heart the interests of other litigants in future cases, and hold them equal in weight with the interests of today's." *Id.* at 1303; *see also Bonner Mall,* 513 U.S. at 27, 115 S.Ct. 386 ("To allow a party who steps off the statutory path [of seeking appellate relief from an adverse judgment] to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system.").

While "exceptional circumstances may conceivably counsel" granting a motion for vacatur at the behest of settling parties, *Bonner Mall,* 513 U.S. at 29, 115 S.Ct. 386 no such circumstances were presented in the case at bar. The fact that Dr. Udebiuwa wanted the judgment vacated to avoid its collateral estoppel use against him in a disciplinary proceeding was a reason to deny vacatur, not to grant it. Simply put, Dr. Udebiuwa was not entitled to vacatur, and there was no injustice in the Board's refusal to honor his expectation that the Superior Court would give it to him.

■ Apart from his contention that the judgment in the malpractice action should have been treated as vacated, which we have rejected, Dr. Udebiuwa advances no argument that the Board of Medicine abused its discretion by using that judgment in accordance with the doctrine of offensive nonmutual collateral estoppel to establish the fact that he had an inappropriate relationship with a patient. It is undisputed that the issue in question was "actually litigated" in the malpractice action, was "determined by a valid and final judgment" in that action, and was "essential to th[at] judgment." *Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 421 (D.C.1984). The other conditions for the offensive use of collateral estoppel, which the Supreme Court articulated in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331–32, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and which this court adopted in *Ali Baba,* 482 A.2d at 422, also were met. Specifically, the Board of Medicine could not have participated in the

malpractice action; Dr. Udebiuwa had ample incentive in that action to litigate fully the issue of his relationship with his patient; no judgments existed that were inconsistent with the judgment in the malpractice action; and Dr. Udebiuwa had no procedural opportunities available to him only in the disciplinary proceeding that he might have used to achieve a more favorable resolution of the issue of his misconduct with a patient. The Board therefore did not abuse its discretion by giving preclusive effect to the malpractice judgment on that issue.

■ Dr. Udebiuwa also complains about the delays he encountered in the administrative proceeding. Under D.C.Code § 3–1205.19(h) (2001), the Board of Medicine was supposed to issue a final decision in writing within ninety days of conducting a hearing. Applicable regulations prescribed tighter deadlines. *See* 17 DCMR §§ 4114.3 (administrative law judge to submit a recommended decision to the Board within thirty days of the hearing) and 4117.1 (Board to issue decision within sixty days of the hearing). These deadlines were not met in Dr. Udebiuwa's case; for example, the Board did not issue its decision until eleven months after the hearing concluded. Nonetheless, the delays do not entitle Dr. Udebiuwa to relief because they did not prejudice him. *See Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights*, 527 A.2d 282, 285 (D.C.1987) (stating that in cases of extreme administrative delay, a proceeding may be dismissed if the delay causes a party "substantial prejudice"). While delays in contravention of the statutory mandate are regrettable, the deadlines are "more in the nature of a precatory directive than a jurisdictional prerogative," particularly in light of the "governmental interests at stake" in professional disciplinary proceedings. *Man-*

*nan v. District of Columbia Bd. of Med.*, 558 A.2d 329, 334 (D.C.1989); *see also Salama v. District of Columbia Bd. of Med.*, 578 A.2d 693, 695 n. 1 (D.C.1990). The preferred remedy for administrative delay is an order compelling agency action, not a reversal of the eventual agency decision. *See* D.C.Code § 2–510(a)(2); *see also Nelson v. District of Columbia*, 772 A.2d 1154, 1156 (D.C.2001); *Harris v. District of Columbia Rental Hous. Comm'n*, 505 A.2d 66, 71 (D.C.1986).

■ Dr. Udebiuwa's remaining two contentions on appeal require no extended discussion. First, the Executive Director of the Office of Professional Licensing was not disqualified from testifying about the malpractice lawsuit and related matters merely because he performed various administrative duties for the Board (such as receiving HUH's report of the malpractice settlement, directing the Board's Office of Compliance to investigate, and notifying Dr. Udebiuwa of the Board's actions). The Executive Director had no adjudicatory role and there was no incompatibility between his testifying and his administrative duties that would overcome the presumption that the Board acted fairly. *See Park v. District of Columbia Alcoholic Beverage Control Bd.*, 555 A.2d 1029, 1032 (D.C.1989). Lastly, it is immaterial that the notice of proposed disciplinary action sent to Dr. Udebiuwa from the Board may have been in error in stating that Howard University had reported the malpractice settlement to the National Practitioner's Data Bank. Dr. Udebiuwa was not disciplined for anything relating to the report.

The decision of the Board of Medicine is *affirmed.*

SCHWELB, Associate Judge, concurring in the judgment:

I agree with my colleagues that the decision of the District of Columbia Board

of Medicine should be affirmed. For the reasons set forth below, however, I am unable to join the court's opinion.

In the Superior Court malpractice case, the jury returned a verdict in the plaintiff's favor, and against Dr. Udebiuwa and Howard University, in the amount of $2,300,000. Judgment was entered on the verdict. The defendants appealed. The case was then settled for $1,500,000, and the parties filed a praecipe agreeing that "[a]s a part of the settlement agreement and release, the parties agree that the judgment entered against [the defendants] is to be vacated." No motion to vacate the judgment was filed, however, and—most significantly—the trial judge did not vacate the judgment. As my colleagues point out, *ante,* page 162, the parties could not, without the court's consent, vacate a judgment that the court had entered. Only the court could do that. Therefore, the judgment remained in effect and collaterally estopped Dr. Udebiuwa from contesting the facts found against him by the jury, namely, that he had committed malpractice against the patient who had sued him in the Superior Court.

That, to me, should be the end of this appeal, or at least of the "collateral estoppel" issue. On these facts, a judgment that has not been vacated has a "collateral estoppel" effect. It does not make any difference, on this appeal from the decision of the District of Columbia Board of Medicine, whether the judgment in the Superior Court case should or should not have been vacated. The fact is that it *was not* vacated, that it remains in effect, and that the appeal from the judgment has been dismissed, rendering the judgment final.

In spite of the foregoing, my colleagues in the majority address in some detail the question whether a judgment ought to be vacated when the parties have settled the case during the pendency of an appeal.

They tell us, *inter alia,* that a judgment of the court is "valuable to the legal community as a whole," that it may have "preclusive benefits for third parties," and that only "exceptional circumstances may conceivably counsel granting a motion for vacation at the behest of settling parties." *Ante* at pages 162–63 (citations and internal quotation marks omitted). These are certainly interesting propositions, but they have absolutely no bearing on the outcome of this case. Even if the law encouraged vacatur following settlement, and even if the judge ought to have granted a hypothetical motion to vacate the judgment if one had been filed, the fact is that the judgment in the Superior Court was not vacated, that no appeal from the judgment remains pending, that the judgment is therefore final, and that it therefore properly serves as a basis for claim preclusion. That is all that matters. In my opinion, the remainder of the discussion is purely advisory and not necessary to the court's holding.

"[A]n issue is ripe for adjudication only when the parties' rights may be immediately affected by it." *Allen v. United States,* 603 A.2d 1219, 1229 n. 20 (D.C. 1992) (en banc) (citing *Smith v. Smith,* 310 A.2d 229, 231 (D.C.1973)). Even when we sit en banc, we generally decline to issue guidelines which are not required to decide the case before us. *Id.* As we explained in *District of Columbia v. Wical Ltd. Partnership,* 630 A.2d 174, 182 (D.C.1993),

[t]he suggestion that this court may "wish to give the trial court guidance" on an issue not yet presented amounts to a request that we write an advisory opinion. This court has no authority to issue advisory opinions regarding questions which may or may not arise. *Smith,* [*supra* ], 310 A.2d at 231; see also *Allen,* [*supra* ], 603 A.2d at 1228–29 n. 20. "Courts should not decide more

than the occasion demands." *Younger v. Smith,* 30 Cal.App.3d 138, 153, 106 Cal.Rptr. 225, 235 (1973). Like the Supreme Court of Washington,

[a]s a general rule, this court will decide only such questions as are necessary for a determination of the case presented for consideration, and will not render decisions in advance of such necessity . . . .

*Johnson v. Morris,* 87 Wash.2d 922, 557 P.2d 1299, 1305 (1976) (en banc) (citation omitted); *see also Local No. 8–6, Oil, Chemical and Atomic Workers Int'l Union v. Missouri,* 361 U.S. 363, 367–68, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960).

In light of the foregoing, I would end the analysis with the determination that Dr. Udebiuwa is collaterally estopped from contesting the determination of malpractice because the judgment in the malpractice case has not been vacated, and I would defer to another day discussion of the circumstances, if any, under which a trial judge should vacate a judgment because the parties have settled the underlying case.