SPRING VALLEY WESLEY HEIGHTS
CITIZENS ASSOCIATION, et al.,
Petitioners,

v.

DISTRICT OF COLUMBIA BOARD
OF ZONING ADJUSTMENT,
Respondent,

and

American University, Intervenor.

No. 92–AA–980.

District of Columbia Court of Appeals.

Argued March 17, 1994.
Decided June 23, 1994.

Neil B. Siegel, with whom William H. Mandir, Washington, DC, was on the brief, for petitioners.

John Payton, Corp. Counsel, at the time the statement was filed, with whom Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, filed a statement in lieu of brief.

Maureen E. Dwyer, with whom Louis P. Robbins, Washington, DC, was on the brief, for intervenor.

Before WAGNER, Chief Judge, and SCHWELB, Associate Judge, and GALLAGHER, Senior Judge.

SCHWELB, Associate Judge:

The principal substantive question presented for our consideration is whether the Board of Zoning Adjustment (BZA) correctly concluded that it lacked the authority to prohibit American University (the University)

from occupying commercially zoned off-campus property for the purpose of constructing a new law school on that property. We sustain the BZA's construction of its own authority and hold that there was no procedural error requiring reversal. If the University has precluded itself by agreement with local community organizations from constructing the law school on the newly acquired site—an issue on which we take no position—then, as the BZA explicitly recognized, the associations may take action to vindicate their rights in an appropriate forum.

### I.

This case is a sequel to *Glenbrook Road Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22 (D.C.1992). In *Glenbrook,* this court affirmed the BZA's approval of the University's plan to locate its law school on campus at the Cassell Center. As we noted in *Glenbrook,* the BZA approved the University's campus plan but "conditioned its approval of the proposed site for the law school on the incorporation of the terms of the July 11, 1989 agreement between several community organizations and the University." *Id.* at 29–30. Condition 5 of the BZA's order provides in pertinent part that the terms and conditions of that agreement are "incorporated in this order as though fully set forth herein and shall be enforceable in the same manner as any other condition contained in an order of this Board." Paragraph B of the agreement, which the BZA incorporated into its order, restricts "approval of any building, other than the presently proposed law school building, or an enlargement of existing buildings, on the north side of Massachusetts Avenue."

■ On March 17, 1992, this court issued its decision in *Glenbrook* affirming the decision of the BZA. Thirteen days later, on March 30, 1992, the University, abandoning its insistence in *Glenbrook* that the Cassell Center and nothing but the Cassell Center would meet its needs, entered into a contract to purchase a building at 4801 Massachusetts

Avenue, N.W. (the 4801 building) which is located off campus on the north side of Massachusetts Avenue, some four blocks from the Cassell Center, for the purpose of placing the law school at that location.[1] The 4801 building is in a commercially zoned district, and a college or university use is permitted there as a matter of right. *See Draude v. District of Columbia Bd. of Zoning Adjustment,* 527 A.2d 1242, 1246 (D.C.1987); 11 DCMR § 701.6(f) (1991). The contract provided for a 90–day period during which the University was to determine the feasibility of its plans for the 4801 building.

As a part of the feasibility study, representatives of the University applied for a certificate of occupancy for the 4801 building. On May 26, 1992, the Zoning Administrator advised the University by letter that

considering the terms of both the BZA order and the agreement, I am of the opinion that before I can approve applications for the American University to occupy premises [at] 4801 Massachusetts Avenue, N.W., it will be necessary for the University to seek modification of its Campus Plan.

On June 18, 1992, the University filed a motion with the BZA in which it requested the Board to clarify its order and to declare that the order was not intended to restrict the University's use and occupancy of off-campus property where such use and occupancy were consistent with the zoning classification applicable to that property. The University served notice of its application on the participants in the prior BZA proceedings. In response, some organizations supported the University's request, while others opposed it.

On July 8, 1992, the BZA granted the University's motion. The Board held in pertinent part as follows:

The Board's jurisdiction may not extend beyond that expressly set forth in the D.C.Code and the Zoning Regulations. In the instant case, the Board's authority is limited to the areas of residential property

---

1. The University represents that at the time of the *Glenbrook* litigation it was not aware of the

potential availability of the 4801 building.

located within the campus plan boundaries as specifically reviewed and considered by the Board through the special exception process.

\* \* \* \* \* \*

If the scope of the agreement extends beyond the parameters to which the Board's consideration is applicable, the parties to such agreement are not precluded from seeking clarification or enforcement of the private agreement through appropriate channels.

Petitioners, several community organizations opposed to the University's plans, have asked this court to review the BZA's order of July 8, 1992.

## II.

■ We accord great weight to any reasonable construction by an agency of its own authority. *Watergate Improvement Associates v. Public Service Comm'n of the District of Columbia,* 326 A.2d 778, 785 (D.C.1974). "Indeed, the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Id.* (quoting *Red Lion Broadcasting Co. v. Federal Communications Comm'n,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969)). We must therefore determine if the BZA's construction of its authority was clearly wrong.

The BZA's powers are those defined by statute and regulation. *See* D.C.Code § 5–424 (1988); 11 DCMR §§ 3100 *et seq.* This court, like other courts, has been "reluctant to read into a statute powers for a regulatory

agency which are not fairly implied from the statutory language, since the agency is statutorily created." *Chesapeake & Potomac Tel. Co. v. Public Service Comm'n of District of Columbia,* 378 A.2d 1085, 1089 (D.C.1977). "Absent express statutory or regulatory authority, a regulatory agency may not impose remedial measures." *Davidson v. District of Columbia Bd. of Medicine,* 562 A.2d 109, 112 (D.C.1989).

■ The statute which sets out the BZA's authority explicitly provides that the Board "shall not have the power to amend any regulation or map." § 5–424(e). Petitioners have cited no provision in the statute or regulation, and we know of none, which would empower the BZA to take the action which petitioners claim that it has taken here. Indeed, "[t]he Home Rule Act explicitly provides that the Zoning Commission is the exclusive agency vested with power to enact zoning regulations for the District of Columbia." *Tenley and Cleveland Park Emergency Committee v. District of Columbia Bd. of Zoning Adjustment,* 550 A.2d 331, 336 (D.C.1988). The 4801 building is located in a commercially zoned district in which a college or university use is permitted as a matter of right. *Draude, supra,* 527 A.2d at 1246. If the BZA were to attempt to proscribe such matter-of-right use, it would be exercising powers reserved to the Zoning Commission.[2] Under these circumstances, the BZA reasonably concluded that it lacked authority to prohibit the University from acquiring the property for the purpose of using it as a law school.[3]

---

2. Recently, in Zoning Commission Order No. 752, 41 D.C.Reg. 1201 (Feb. 14, 1994), the Commission rejected a proposal by a member of the Council of the District of Columbia (which was also supported by several Advisory Neighborhood Commissions) that it amend applicable regulations to provide that "any relocation of a major use within or outside the campus plan, even if to a so-called matter-of-right use, be subjected to ... [BZA] review and approval." The Commission concluded that the petition "does not have sufficient merit to warrant the authorization of a public hearing, is not in the best interest of the District of Columbia, and is inconsistent with the intent and purpose of the Zoning Regulation and the Zoning Act." 41 D.C.Reg. at 1203. The Commission's decision that the regulations should not be amended to grant the BZA the

authority which petitioners claim that it exercised in this case reinforces our conclusion that no such authority exists under present law.

3. On June 30, 1992, the Office of Corporation Counsel, responding to a request for legal advice by the Acting Director, Office of Zoning, concluded as follows:

The Motion to Clarify Condition No. 5 involves questions of law concerning the jurisdiction of the Board. Consideration of this motion clearly does not require further testimony from interested parties.

In light of the above, the BZA should issue an order clarifying that Condition No. 5 applies only to the property included within the boundaries of the University campus that was

■ Petitioners contend that by incorporating the July 11, 1989 agreement into its Order, the Board explicitly prohibited the action which the University now proposes to take. The University claims, on the other hand, that the agreement and the Board's order were meant to apply only to the area of residential property located within the campus plan boundaries. We do not decide this issue, because, irrespective of which interpretation of the agreement is correct, the result is necessarily the same. If, as the University contends, the order and agreement cover only "on campus" uses for which a special exception was required, then there is no conflict between Condition No. 5 and the University's proposed action. On the other hand, even if the agreement prohibits off-campus uses available to the University as a matter of right, the order incorporating the agreement could not extend the BZA's power beyond its statutory authority, for the jurisdiction of an administrative agency cannot be extended by agreement of the parties. *American Airlines v. Air Line Pilots Ass'n,* 91 F.Supp. 629, 632 (E.D.N.Y.1950); *In re Glen Rock,* 135 A.2d 506, 511 (N.J.1957); 73 C.J.S. *Public Administrative Law and Procedure* § 51(b), at 504–05 (1983).

Petitioners rely on *Levy v. District of Columbia Bd. of Zoning Adjustment,* 570 A.2d 739 (D.C.1990), but that decision affords them scant solace. This court held in *Levy* that, in approving a campus plan, the BZA must determine whether the proposed use for which a special exception is sought is likely, *as a whole,* to become objectionable to neighboring property because of noise, traffic, number of students, and other conditions. *Id.* at 751. To that end, the BZA was obliged to consider the effects on the neighborhood of proposed street closings, pedestrian bridges, and height restrictions, notwithstanding the Board's lack of authority to approve or disapprove such proposals. *Id.* at 750–51. To hold that in approving or disap-

proving a campus plan, the BZA may, and in fact must, consider the consequences of proposals which it has no authority to regulate is a far cry indeed from holding that the agency is empowered to proscribe uses of property which are permissible as a matter of right under existing zoning classifications. The decision in *Levy,* in our view, does not undermine the Board's conclusion that it was without authority to do what petitioners say it did.

**III.**

■ Petitioners also object to the procedures utilized by the BZA in granting the University's motion for clarification. They claim that a full-scale evidentiary hearing should have been held. They also question whether the Board is authorized to issue clarifications of its orders years after the fact.

We think it important to note that the sole question presented by the University's motion for clarification related to the BZA's jurisdiction, and was therefore one of law. Accordingly, no further testimony was required.[4] We emphasize that the BZA did not decide the dispute between the parties as to the meaning of the agreement and, in particular, the question whether the agreement was restricted to on-campus structures, or whether it was also intended to apply to off-campus buildings on the north side of Massachusetts Avenue. It may well be that resolution of this dispute would require an evidentiary hearing. As we have noted at page 4, however, the Board explicitly declined to preclude enforcement of the agreement in an appropriate forum.

The BZA being of the opinion that the jurisdictional question presented to it could most effectively be resolved by entertaining a motion for clarification, we are not disposed to second-guess the Board. Although the University acknowledges that there is no

before the BZA, and not to any other property where a college or university use is permitted as a matter of right.

4. Noting the University's "concession" that the clarification proceedings constituted a "contested case," petitioners argue that a trial-type hearing was required. We have held, however, that

"a matter retains its status as a contested case even if there are no disputed 'adjudicative facts' necessitating a hearing." *District of Columbia v. Douglass,* 452 A.2d 329, 331 (D.C.1982) (citations omitted). Here, as we have noted, there are no disputed "adjudicative facts."

statutory or regulatory provision expressly authorizing motions for clarification, or prescribing procedures for such motions, there is Zoning Commission precedent for the BZA's action. In Zoning Commission Order No. 474, 32 D.C.Reg. 5942 (Oct. 7, 1985), a party before the Commission filed a motion for reconsideration of a Condition of an order issued by the Commission six months earlier. The Commission declined to act on the motion for reconsideration, but elected instead to issue an order of clarification:

> The Zoning Commission believes that a clarification of its intent in Z.C. Order No. 453 regarding lot occupancy is in the best interest of the District of Columbia and is consistent with the intent and purpose of the Zoning Regulations and the Zoning Act.
>
> In consideration of the reasons set forth herein, the Zoning Commission of the District of Columbia hereby orders CLARIFICATION of its intent in Z.C. Order No. 453 regarding lot occupancy.

32 D.C.Reg. at 5943–44 (capitalization in original).

Given the nature of the issue presented to the BZA in this case, we conclude that the Board acted reasonably in following the procedure previously utilized by the Commission in Order No. 474. Since the issue was solely a legal one, and since the petitioners were provided with a reasonable opportunity to present their legal arguments, no trial-type hearing was required, and the procedure utilized by the Board fully protected petitioners' substantive rights.

Finally, given the purely legal character of the issue before the Board, as well as our dispositive substantive holding that the BZA lacks jurisdiction to proscribe matter-of-right uses of property located off campus, the shortcomings attributed by petitioners to the Board's procedures could not affect the result. Accordingly, even if we agreed with petitioners' procedural contentions, which we do not, a remand would serve no useful purpose.[5]

## IV.

For the foregoing reasons, the order of the Board of Zoning Adjustment is

*Affirmed.*[6]

---

**5.** Petitioners cite 11 DCMR § 3301.1 (1991), which provides that

> [T]he Board may, for good cause shown, waive any of the provisions of this chapter, if in the judgment of the Board, the waiver will not prejudice the rights of any party and is not otherwise prohibited by law.

Even if we were to assume that a waiver of a trial-type hearing is necessary where the question before the Board is purely one of law, there was no prejudice here to petitioners and no unlawful conduct on the part of the Board. To require the Board, notwithstanding the foregoing considerations, to issue findings of fact and conclusions of law about its reasons for any waiver would delay the resolution of the controversy when the dispositive legal issue has already been settled by our decision in this case.

**6.** Petitioners also invoke the doctrine of judicial estoppel. *See Plough, Inc. v. Nat'l Academy of Sciences*, 530 A.2d 1152, 1159 n. 10 (D.C.1987). They argue that the University took a position in *Glenbrook* regarding the meaning of Condition No. 5 contrary to the position which it is taking in the present controversy. We conclude, however, that even if the University did take a contrary position in the earlier litigation—an issue which we do not decide—the BZA's jurisdiction cannot be expanded by the actions of private parties. *See* text, *supra* at 437 and authorities there cited. The operation of any doctrine of estoppel against the University could not confer on the Board authority which it does not possess under the applicable statute and regulations.