**DISTRICT INTOWN PROPERTIES, LTD., Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Respondent,**

**D.C. Preservation League, et al., Intervenors.**

No. 93–AA–488.

District of Columbia Court of Appeals.

Argued Nov. 17, 1995.
Decided July 18, 1996.

Wallace A. Christensen, with whom Ronald C. Jessamy was on the brief, for petitioner.

Garland Pinkston, Jr., Acting Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a Statement in Lieu of Brief for respondent.

Richard B. Nettler, with whom Anne Spielberg was on the brief, for intervenors.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and MACK, Senior Judge.

SCHWELB, Associate Judge:

District Intown Properties, Ltd. has asked this court to review an order of the Mayor's Agent denying District Intown's applications for permits to erect eight town houses on the lawn of an apartment building in northwest Washington, D.C. The eight lots comprising this lawn have been designated part of a "historic landmark" by the District's Historic Preservation Review Board (HPRB) pursuant to the Historic Landmark and Historic District Protection Act of 1978 (HLHDPA), D.C.Code §§ 5–1001 et seq. (1994).

The case is unusual because District Intown has not challenged the Mayor's Agent's authority to deny the requested construction permits. Indeed, District Intown has effectively conceded the correctness of a finding by the Mayor's Agent that the proposed construction would be incompatible with the character of the historic landmark; the statute requires denial of the permits on the basis of such incompatibility, standing alone. See D.C.Code § 5–1007(f). Without asking that we order that the building permits be issued, District Intown asks us to vacate as ultra vires certain findings of fact and conclusions of law in which the Mayor's Agent held that the denial of the permits would not cause unreasonable economic hardship to District Intown and would not constitute an uncompensated governmental taking. District Intown obviously seeks this essentially declaratory relief because it apprehends that the findings sought to be vacated would have preclusive effect in any future litigation which District Intown may institute to secure damages from the District of Columbia for an alleged uncompensated taking.

Judicial review in this court pursuant to the District's Administrative Procedure Act (DCAPA) is available only to a person who has suffered a legal wrong, or who has been adversely affected or aggrieved by an order of an agency in a contested case. D.C.Code § 1–1510(a) (1992). In this case, District Intown has not suffered a legal wrong, nor has it been adversely affected by the Mayor's Agent's order, for the findings and conclusions by the Mayor's Agent of which District Intown complains were beyond the Mayor's Agent statutory jurisdiction and can have no preclusive effect. Accordingly, we dismiss the petition for review.

I.

PROCEEDINGS BEFORE THE
MAYOR'S AGENT

In 1961, District Intown purchased Cathedral Mansion South (CMS), a part of the three-building Cathedral Mansions (CM) apartment complex. CM occupies approximately eight acres on the northwest corner of Connecticut and Cathedral Avenues, across from the National Zoo. CM's developer maintained open space in excess of that required by the zoning regulations, in order to create the illusion of a resort-like building in a park-like setting. The Mayor's Agent found that the lawn is an integral feature of CM's design and concept, and that it was a factor in the decision to grant the site historic landmark status. Because CM is located so near the Zoo, any construction on the property is subject to the approval of the Commission of Fine Arts (CFA) pursuant to the Shipstead–Luce Act, D.C.Code § 5–410 (1994).

When District Intown purchased CMS in 1961, the property consisted of one large lot comprising three buildings and a large lawn facing Connecticut Avenue. In 1988, District Intown subdivided CMS into nine distinct lots—lot 106, on which the apartment building is now located, and lots 107–114, which now comprise the lawn. On December 30, 1988, District Intown applied for permits to construct eight new town houses on lots 107–114. On March 2, 1989, two community organizations which were opposed to the proposed construction applied to HPRB for designation of CMS as part of a historic landmark.[1] HPRB granted the applications on May 17, 1989.

In the meantime, District Intown had obtained zoning approval for the proposed construction of the town houses, and its applications for new building permits were referred

1. Protections for historic properties apply to pending applications for historic landmark designation as well as to properties already designated as historic. D.C.Code § 5–1002(6)(B).

to the CFA and HPRB for review under the Shipstead–Luce Act.[2] The two agencies voted to disapprove the project; the CFA found it to be contrary to orderly development, and HPRB determined that the construction would be "incompatible with the historic landmark."

In late January 1992, District Intown, which had dismissed its 1989 permit applications without prejudice following their rejection by the CFA and HPRB, filed new applications, identical to those which it had previously dismissed, and again sought to erect eight new town houses on the CMS lawn. On March 10, 1992, District Intown obtained zoning approval. As in 1989, the new applications were referred to HPRB for review pursuant to D.C.Code § 5–1007. On March 18, 1992, HPRB denied the applications, reaffirming its 1989 determination that the proposed new construction would be incompatible with the historic landmark.

On May 11, 1992, HPRB mailed District Intown a written notice of its recommendation. HPRB notified District Intown that if it wished to request a public hearing before the Mayor's Agent, it should advise HPRB, within ten days, whether it intended to make any of the following claims: (A) that the proposed alteration is necessary to construct a project of special merit; (B) that failure to issue a permit will result in unreasonable economic hardship to [District Intown]; or (C) that the proposed alteration is consistent with the purposes of the HLHDPA as set forth in D.C.Code § 5–1001(b). District Intown responded by requesting a hearing, and indicated that it would rely on all three of the grounds enumerated by HPRB. The District of Columbia Preservation League, Cathedral

Mansions South Tenants Association, and Woodley Park Community Association were granted permission to appear as parties in opposition to District Intown's application; these three organizations are now intervenors in this court.

On July 22 and 24, 1992, the Mayor's Agent held the requested hearing. At the beginning of that hearing, District Intown withdrew its claim that the new construction qualified as a project of special merit and proceeded on the issues of compatibility and economic hardship. After the hearing, District Intown submitted proposed findings of fact and conclusions of law. It then argued for the first time that in passing upon applications for new construction, the Mayor's Agent was not authorized to consider unreasonable economic hardship, but was required to grant the permits unless the proposed construction was incompatible with the historic landmark.

On March 8, 1992, the Mayor's Agent entered a "Decision and Order" which included findings of fact and conclusions of law with respect to both compatibility and economic hardship. The Mayor's Agent concluded that the proposed construction would be incompatible with the landmark because the design of the new buildings would result in the destruction of the lawn, which is an integral part of the landmark. Indeed, he was of the opinion that *any* construction on the lawn would be incompatible with its landmark designation. The Mayor's Agent also concluded that District Intown had failed to demonstrate that denial of the construction permits would create unreasonable economic hardship,[3] or would constitute a "taking" of District Intown's property without just compen-

---

2. The regulations implementing the HLHDPA provide, *inter alia*:

The Director shall refer all applications [for new construction] to the [CFA] that are subject to review under the ... Shipstead Luce Act, D.C.Code § 5–410 (1981).... The Mayor ... may, at his or her discretion, also refer applications to the [HPRB] which are referred to the [CFA].

10 DCMR § 2510.2–.3 (1994).

3. The Mayor's Agent noted that District Intown had introduced limited evidence in support of its claim of economic hardship. This evidence consisted primarily of calculations of the loss of income occasioned by not developing the eight lots in question and of the maintenance and tax costs of retaining the undeveloped lawn. The Mayor's Agent found that District Intown had failed to comply with 10 DCMR § 2516.4, which requires a party claiming economic hardship to produce certain specific information with regard

sation.[4]

On April 21, 1993, District Intown filed a petition for review contending that "the Mayor's Agent committed error by making findings of fact and entering conclusions of law with respect to economic hardship, because the Mayor's Agent lacked jurisdiction to consider these questions." On the basis of this asserted jurisdictional defect, District Intown asked this court to vacate paragraphs 36–43 of the Mayor's Agent's decision (which consisted of findings of fact as to economic hardship) and paragraphs 64–76 (which represented the Mayor's Agent's conclusions of law as to that issue). In the alternative, District Intown requested this court to set aside, on the merits, paragraphs 74–76 of the Decision, in which the Mayor's Agent concluded that the landmark status of the site precluded *any* construction on the lots in question. District Intown made no demand in its petition that this court vacate, strike, or otherwise disapprove that portion of the Mayor's Agent's decision which is denominated "Order." In the Order, the Mayor's Agent denied the applications for permits to construct town houses on lots 107 through 114.

## II.

### THE COURT'S JURISDICTION

District Intown, as we have noted, does not challenge the propriety of the Mayor's Agent's denial of the permit applications on the ground that the proposed construction would be incompatible with the historic landmark on which the town houses were to be located. *See* D.C.Code § 5–1007(f). As the intervenors correctly point out in their brief, "the practical effect of any decision by this court on the petition for review will be to leave in place the denial of the permit application.... District Intown seeks to have

those portions of the Mayor's Agent's opinion resolving the unreasonable economic hardship and taking claims vacated so that it can relitigate them in another forum."

■ These circumstances raise the question whether the case presents a live and justiciable controversy.[5] In order to obtain judicial review, District Intown must allege that it has been adversely affected or aggrieved by the findings and conclusions of which it complains, or that it has suffered a legal wrong. *See* D.C.Code § 1–1510(a) (1992). A party has not been adversely affected or aggrieved by agency action unless, *inter alia,* it has suffered or will sustain some actual or threatened "injury in fact" from the challenged agency action. *Concerned Residents v. Grant,* 537 F.2d 29, 33 (3d Cir.1976) (citations omitted). Moreover, the actual or threatened "legal" wrong or injury must be "certain," rather than "conjectural or speculative." *Florida v. Weinberger,* 492 F.2d 488, 494 (5th Cir.1974) (citations omitted).

■ Generally, "administrative orders are not reviewable unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 112–13, 68 S.Ct. 431, 437 92 L.Ed. 568 (1948) (citations omitted); *see also United States v. Los Angeles & Salt Lake R.R. Co.,* 273 U.S. 299, 311–12, 47 S.Ct. 413, 415, 71 L.Ed. 651 (1927) (Brandeis, J.). Here, the findings and conclusions regarding economic hardship which are the subject of District Intown's challenge do not, standing alone, impose an obligation, deny a right, or fix any legal relationship. The order of the Mayor's Agent denying the permits would, of course, qualify for review under the standards articulated in these authorities, but District In-

---

to the property at least twenty days prior to the date of the hearing.

4. The HLHDPA effectively adopts the Fifth Amendment standard for determining economic hardship: "Unreasonable economic hardship means that failure to issue a permit would amount to a taking of the owner's property without just compensation...." D.C.Code § 5–1002(14).

5. Like the Supreme Court, this court " 'reviews judgments, not opinions.' " *Thoubboron v. Ford Motor Co.,* 624 A.2d 1210, 1212 n. 1 (D.C.1993) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)); *see also Green v. Lehman,* 744 F.2d 1049, 1052–54 (4th Cir.1984).

town has explicitly declined to challenge that order, nor has it demanded that we direct that the permits issue.

 The only threatened injury of which District Intown complains in this case derives from the apprehended preclusive consequences, in possible future civil proceedings, of the findings and conclusions of the Mayor's Agent regarding the question whether District Intown suffered an uncompensated taking. But even assuming, without deciding, that threatened collateral consequences to a party's rights in a hypothetical future lawsuit may ever be sufficient to entitle a party to judicial review pursuant to the DCAPA,[6] we conclude as a matter of law that no such injury has been sustained or threatened here. The findings and conclusions of the Mayor's Agent can have preclusive effect only if the Mayor's Agent acted within his statutory authority in issuing them. "It is essential ... to the conclusiveness of a judgment or decree rendered by a court [or agency][7] that the court [or agency] have jurisdiction of the subject matter...." 50 C.J.S. *Judgments* § 689, at 146 (1947 & Supp.1995). In order to invoke the doctrine of collateral estoppel, a party must show that the court or agency "had jurisdiction to render a [decision] adjudicating the question." *Wilburn v. North Jellico Coal Co.*, 272 Ky. 749, 115 S.W.2d 288, 292 (1938). If the Mayor's Agent lacked the authority to issue these findings and conclusions, his decision was "ineffective as an estoppel." *United States v. Silliman*, 65 F.Supp. 665, 669 (D.N.J.1946) (citations omitted). District Intown's apprehensions of preclusive consequences thus have substance only if the Mayor's Agent was authorized by law to decide the issue of

economic hardship. We conclude that he was not.

## III.

## THE MAYOR'S AGENT'S JURISDICTION

 The HLHDPA provides that a permit for new construction

shall be issued unless the Mayor, after due consideration of the zoning laws and regulations of the District of Columbia, finds that the design of the building and the character of the historic district or historic landmark are incompatible....

D.C.Code § 5–1007(f). Compatibility with the historic district or landmark is thus the sole statutory criterion for determining whether new construction shall be authorized. In contrast to other HLHDPA provisions, which expressly authorize the Mayor to consider unreasonable economic hardship (as well as the public interest) when evaluating applications for permits to demolish, alter, or subdivide a historic landmark or a property in a historic district, *see* D.C.Code §§ 5–1004 to –1006, Section 5–1007, which deals with permits for new construction, makes no mention at all of economic hardship.

The difference between Section 5–1007 and the other provisions is not accidental. "[I]n drafting this legislation, the City Council chose to separate the treatment of permit applications for new construction from those which seek to demolish, alter or modify existing structures within a historic area." *Dupont Circle Citizens Ass'n v. Barry*, 455 A.2d 417, 422 n. 24 (D.C.1983). Taking the statutory language at face value, we discern no

6. This court has held that "an issue is ripe for adjudication only when the parties' rights may be immediately affected by it." *See, e.g., Allen v. United States*, 603 A.2d 1219, 1229 n. 20 (D.C. 1992) (en banc), *cert. denied*, 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992) (quoting *Smith v. Smith*, 310 A.2d 229, 231 (D.C.1973)). We have, on the other hand, "adhere[d] to our prior decisions refusing to dismiss an appeal as moot when resolution of the legal issues might affect a separate action, actual or prospective, between the parties." *See, e.g., In re A.C.*, 573 A.2d 1235, 1241 (D.C.1990) (en banc) (citations omitted).

7. Principles of administrative collateral estoppel (issue preclusion) apply when "the agency is acting in a judicial capacity and resolves disputed issues of fact *properly before it* which the parties have had an adequate opportunity to litigate." *City Wide Learning Ctr., Inc. v. William C. Smith & Co.*, 488 A.2d 1310, 1313 (D.C.1985) (emphasis added) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)); *see also District of Columbia v. Fisher*, 258 A.2d 456, 458–59 (D.C.1969).

basis for concluding that construction incompatible with a historic landmark may be permitted in order to avoid economic hardship to a developer.

The result dictated by the language and structure of the statute is supported by common sense and by analogous judicial precedent. Indeed, a construction of the HLHDPA which would require the Mayor's Agent to grant an application for a building permit for the erection of a structure incompatible with the historic landmark would, in our view, be altogether unreasonable. A developer who claims that the denial of a permit for new construction constitutes an uncompensated taking of his property is free to bring an action against the District for damages, and thus has a readily available legal remedy. *See, e.g., District of Columbia v. Wical Ltd. Ptnshp.*, 630 A.2d 174, 184–85 (D.C.1993). Given the availability of that remedy, a court would surely decline to order the District to issue a building permit. *Id.* There is nothing in the HLHDPA which suggests that the Mayor's Agent, whose powers are limited by statute, is authorized to grant relief which a court would deny. Indeed, after initially arguing the contrary, intervenors acknowledged in their supplemental memorandum that "the Mayor's Agent could not have authorized the issuance of a building permit if he had concluded that denial of the new construction permit would result in unreasonable economic hardship, where a finding of incompatibility was also made."

■ An administrative agency is a creature of statute and may not act in excess of its statutory authority. *See, e.g., Spring Valley Wesley Hts. Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 644 A.2d 434, 436–37 (D.C.1994); *Davidson v. District of Columbia Bd. of Medicine*, 562 A.2d 109, 112 (D.C.1989). The purported exercise of jurisdiction beyond that conferred upon the agency by the legislature is *ultra vires* and a nullity. *See Auger v. District of Columbia Bd. of Appeals and Review*, 477 A.2d 196, 209 (D.C.1984). Because the Mayor's Agent lacked authority to issue the requested building permits even if District Intown proved that it would otherwise suffer unreasonable economic hardship, his disposition of that issue was not only dictum, but also in excess of his statutory jurisdiction.

■ An agency has no authority to conduct a factual or legal inquiry which cannot affect the proper disposition of the dispute. Even aside from the question of the Mayor's Agent's jurisdiction, his resolution of the issue of unreasonable economic hardship was not essential to his decision with respect to District Intown's application for new construction. For that independent reason also, it would have no preclusive effect in any future proceeding in which District Intown may claim an uncompensated taking. *See, e.g., Washington Medical Ctr., Inc. v. Holle*, 573 A.2d 1269, 1283 (D.C.1990) (discussing collateral estoppel and its applicability).[8]

## IV.

## CONCLUSION

For the foregoing reasons, we conclude that District Intown has not alleged injury in fact and has not been adversely affected or aggrieved by the challenged findings and conclusions of the Mayor's Agent. Accordingly, the petition for review is

*Dismissed.*

---

8. Intervenors contend that, even if the Mayor's Agent erred by addressing the issue of unreasonable economic hardship, the error was "invited" by District Intown. They argue that District Intown therefore cannot be heard to complain of the error. *See Wical, supra*, 630 A.2d at 182–83. In this case, however, District Intown addressed the economic hardship issue in response to an explicit invitation to do so from the HPRB, and subsequently attempted to withdraw the issue from the Mayor's Agent's consideration well in advance of the Mayor's Agent's decision. We do not believe that the "invited error" doctrine can fairly be invoked where, as here, the alleged inviter was initially the invitee and was effectively induced to address the issue by the agency. Moreover, parties cannot bestow jurisdiction upon an agency where none exists. *See Spring Valley, supra*, 644 A.2d at 437.