*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 12-CV-1690 & 12-CV-1691

DISTRICT OF COLUMBIA, APPELLANT,

V.

17M ASSOCIATES, LLC, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CVT-10601-10, CVT-10802-10)

(Hon. John M. Campbell, Trial Judge)

(Argued October 22, 2013                    Decided September 4, 2014)

*James C. McKay, Jr.*, Senior Assistant Attorney General for the District of Columbia, with whom *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on the brief, for appellant.

*Stanley J. Fineman*, with whom *Scott B. Cryder* was on the brief, for appellee.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

BECKWITH, *Associate Judge*:  Appellant District of Columbia contends that

the Superior Court erred in deferring to a decision of the Board of Real Property

Assessments and Appeals (BRPAA) that found appellee 17M Associates LLC

(17M) exempt from the possessory interest tax codified at D.C. Code § 47-1005.01

(b) (2012 Repl.).[1]  The District also claims that the Superior Court further erred in finding, on the merits, that 17M's Lease Agreement with the District exempted 17M from the tax.  We hold that the Lease Agreement did not exempt 17M from the tax and that BRPAA acted ultra vires in concluding that it did.  We therefore reverse the judgment of the Superior Court and remand the case for further proceedings.

## I.     Background

On December 14, 1982, the District executed a Lease Agreement with 17M, under which the District "demised" (that is, leased) "certain parcels of land located on M Street between 16th and 17th Streets, Northwest" to 17M for eighty years. 17M built "Improvements" on the land, including commercial office buildings.[2] Section 19.01 of the Lease Agreement was titled "Taxes on Improvements" and required 17M to pay "all taxes, assessments, duties, impositions, and burdens assessed, charged or imposed, upon the Improvements."[3]  Section 19.02, which is

---

[1]  All subsequent statutory references are also to D.C. Code (2012 Repl.).

[2]  The Lease Agreement defines "Improvements" to include "any structures, landscaping or site improvements reflected in the Final Plans and to be constructed or placed on the Demised Premises."

[3]  The taxes that 17M pays on the improvements are not at issue in this appeal.

central to the present dispute, was titled "New Taxes on Improvements" and required 17M to "pay any new tax of a nature not presently in effect but which may be hereafter levied, assessed, or imposed upon the District or the Demised Premises, if such tax shall be based on or arise out of the ownership, use or operation of the Improvements."

In 2000, the Council of the District of Columbia sought to close a "present loophole in the District's tax laws," D.C. Council, Comm. on Fin. & Revenue Report on Bill 13-586, the "Tax Clarity Act of 2000" (Sept. 28, 2000) at 17 [hereinafter Committee Report], by enacting a possessory interest tax on lessees who lease certain government-owned, and therefore tax-exempt,[4] real property but who are not themselves "exempt or immune from income taxation" and are not using the property "for an exempt or immune purpose." D.C. Code § 47-1005.01 (b).[5] The measure taxed the "leasehold interest, possessory interest, beneficial interest, or beneficial use of the lessee or user of the real property." *Id*. The tax is

---

[4] D.C. Code § 47-1005.01 (b) applies to real property "which is exempt or immune from real property taxation under § 47-1002 (1) through (3) or the law of the United States or the District of Columbia." D.C. § 47-1002 (1) through (3) cover: "(1) Property belonging to the United States, unless the taxation of same has been authorized by Congress; (2) Property belonging to the District of Columbia and used for governmental purposes (as determined by the Mayor), unless otherwise provided by law; (3) Property belonging to foreign governments and used for legation purposes."

[5] Tax Clarity Act of 2000, D.C. Law 13-305 (effective June 9, 2001).

paid in the same manner and assessed at the same rate as a real property tax, but is imposed on the lessee or user and not on the property itself. D.C. Code § 47-1005.01 (f)(3).[6] The new tax would permit the District "to tax possessory interests in immune property which cannot at the present time be taxed." Committee Report, at 16. The Report cited the Old Post Office Pavilion and Union Station as examples "where businesses have possessory interests in the property that go untaxed in the District, but would be taxed in the majority of jurisdictions, including Maryland and Virginia." Committee Report, at 16-17. The tax may not be imposed when doing so "would cause the District of Columbia to breach a pre-existing agreement or other legal obligation." D.C. Code § 47-1005.01 (c)(2).

In March 2006, the District sent 17M a Notice of Proposed Possessory Interest Assessment for Tax Year 2007, describing the property as being in "Tax Class 2" and assessing its value for purposes of the possessory interest tax at $24,670,490. The District had not previously levied the tax against 17M. 17M

---

[6] D.C. Code § 47-1005.01 (f)(3) provides in part:

"Tax assessed under this section shall be a personal liability of a lessee or user of real property and billed to the lessee or user. Payments of tax shall be applied in the same manner as payments of real property tax. The tax due under this section shall not give rise to a lien against the real property."

appealed to BRPAA[7] (after its First Level Appeal with the District of Columbia Office of Tax and Revenue (OTR) went unanswered), arguing that imposition of the tax breached its Lease Agreement with the District. OTR responded that BRPAA lacked jurisdiction to decide the case and that the lease did not in any event bar the tax. In a written decision dated September 21, 2007, BRPAA claimed "jurisdiction to determine whether the District of Columbia is precluded from imposing the possessory interest tax against petitioner as it is a matter of classification of the property." On the merits, it reasoned that "[t]he lease agreement explicitly describes 17M's tax obligations and also contemplates future new tax obligation, but none of these describe the possessory tax as one such obligation." Because "the possessory tax is not an included tax obligation" in the Lease Agreement, BRPAA concluded that imposing the tax "violates the pre-existing lease within the meaning of D.C. Code § 47-1005.01 (c)(2)." The District filed a motion for rehearing with BRPAA pursuant to 9 DCMR § 2019; BRPAA held an additional hearing but did not issue a decision. OTR thereafter ignored BRPAA's order "to reclassify the status of the subject property" as exempt from the possessory interest tax and proceeded to assess the tax against 17M for Tax

---

[7] BRPAA has since been replaced by the Real Property Tax Appeals Commission. D.C. Code § 47-825.01a; Real Property Tax Appeals Commission Establishment Act of 2010, D.C. Law 18-363 (effective Apr. 8, 2011).

Years 2007, 2008, 2009, and 2010.[8] 17M appealed each assessment to BRPAA and on November 4, 2010, filed a petition in the Superior Court pursuant to D.C. Code § 47-3303 arguing that imposition of the possessory interest tax violated Section 19.02 of the Lease Agreement. 17M also argued in Superior Court that BRPAA's decision on Tax Year 2007 "is binding upon the District for subsequent tax years."[9]

The trial court granted summary judgment to 17M for Tax Year 2007 in a March 16, 2012, order, and for Tax Years 2008, 2009, 2010, and 2011[10] in a

---

[8] The District had no right to appeal BRPAA's decision, *see* D.C. Code § 47-825.01 (f-1)(1)(A) (stating only that an "owner" may appeal), but the District could have filed a petition for a writ of mandamus, rather than unilaterally ignoring BRPAA's decision based on its belief that BRPAA lacked jurisdiction. A writ of mandamus may be "directed to a Superior Court judge or a District of Columbia officer," D.C. App. R. 21, and may be appropriate in "exceptional circumstances amounting to a judicial usurpation of power." *In re M.O.R.*, 851 A.2d 503, 509 (D.C. 2004) (internal quotation marks omitted).

[9] BRPAA's position on the case changed from year to year. At the time 17M filed in Superior Court, BRPAA had not issued decisions on Tax Years 2008 and 2010. It had issued a decision for Tax Year 2009, finding that it lacked jurisdiction to decide whether the Lease Agreement barred imposition of the tax and stating that "the issue is better suited for decision in the D.C. Superior Court." After proceedings in the Superior Court commenced, but before the Superior Court issued its decisions, BRPAA again changed its position, this time finding, with respect to Tax Years 2007 through 2011, that it *did* have jurisdiction and that the Lease Agreement did *not* bar imposition of the tax.

[10] 17M had filed an additional petition in the Superior Court appealing the District's assessment of the possessory interest tax for Tax Year 2011.

September 11, 2012, order.  In the March 16, 2012, order, the court gave three reasons for finding that "BRPAA did properly exercise jurisdiction":  first, "the statute directs appeals from the Possessory Interest Tax to the BRPAA"; second, "the District's own notice of proposed Possessory Interest Tax directs recipients to file their appeal first with the assessor, then with the BRPAA"; and third, BRPAA's exercise of jurisdiction "avoid[s] a circumstance where there would be no appeal from imposition of the tax."  In its September 11, 2012, order, the trial court granted summary judgment to 17M for the tax years since 2007, "for the reasons stated in Part III-A of [17M's] Memorandum of Points and Authorities." Part III-A explained that BRPAA's decision for Tax Year 2007 applied by its terms to subsequent tax years.  The trial court, which had heard arguments from both parties on the merits,  then "further ordered" that 17M was exempt from the possessory interest tax "pursuant to D.C. Code § 47-1005.01 (c)(2)"—which bars imposition of the tax when it "would cause the District of Columbia to breach a pre-existing agreement or other legal obligation."  The District appealed.

## II.     Whether BRPAA Had Jurisdiction To Decide if 17M Was Exempt

D.C. Code § 47-1005.01 (f)(2) provides that a lessee or user disputing a possessory interest tax assessment "may appeal from a notice of proposed assessed value and real property classification in the same manner and under the same

conditions as an owner under [D.C. Code] § 47-825.01." BRPAA's enabling statute, D.C. Code § 47-825.01, provides that a taxpayer may petition BRPAA "for an administrative review of the real property's assessed value or its classification that shall be in effect for the tax year at issue." D.C. Code § 47-825.01 (f-1)(1)(A). BRPAA ordinarily hears disputes regarding real property taxes, but D.C. Code § 47-1005.01 directs disputes involving the possessory interest tax to BRPAA presumably because the possessory interest tax is calculated at the same rate and in the same manner as a real property tax. D.C. Code § 47-1005.01 (f)(2) & (h).

17M argues that "real property classification," as used in these statutes establishing BRPAA's jurisdiction, includes a lessee or user's exemption status— that is, whether the lessee or user is "classified" as exempt or non-exempt from the possessory interest tax. BRPAA, too, believed that the legality of the assessment was a "matter of classification of the property," so that its jurisdiction included authority to decide whether "application of [the possessory interest tax] would cause the District of Columbia to breach a pre-existing agreement or other legal obligation." D.C. Code § 47-1005.01 (c)(2).

The parties agree that our review of this question of statutory interpretation

is de novo.[11] Focusing on the statute's plain language while considering "the specific context in which that language is used, and the broader context of the statute as a whole," *O'Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd.,* 46 A.3d 378, 383 (D.C. 2012), we conclude that "real property classification" does not refer to a taxpayer's exemption status but to the "classes of taxable real property" defined for Tax Years 2007 to 2010 in D.C. Code § 47-813 (c-7). That statute defines Class 1 Property ("residential real property that is improved and used exclusively for nontransient residential dwelling purposes"), Class 2 Property ("improved commercial real property"), and Class 3 Property ("all real property which cannot be classified as Class 1 Property or Class 2 Property"). For example, in this case, OTR's Notice of Proposed Possessory Interest Assessment for Tax Year 2007 described the leased property as Tax Class 2. Each class is taxed at a different rate, usually involving a certain amount per $100 of assessed value. D.C. Code § 47-812. "The rate of tax under § 47-812, for the applicable classification under § 47-813," determine the taxpayer's liability. D.C. Code § 47-1005.01 (h).

---

[11] Even assuming that an expert administrative agency would be entitled to deference regarding its assessment of the scope of its jurisdiction, *see generally City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1868-75 (2013), such deference would not likely be warranted in this case where, without adequate explanation, BRPAA reversed (and then re-reversed) itself both on the jurisdictional question and on the merits. *See supra* note 9.

The type of expertise required of BRPAA members supports our view that "real property classification," as used in BRPAA's enabling statute, does not encompass a taxpayer's status as "exempt" or "non-exempt" from the possessory interest tax. BRPAA "members shall be persons who have knowledge of the valuation of property, real estate transactions, building costs, accounting, finance, or statistics." D.C. Code § 47-825.01 (a)(1)(C). BRPAA members need not be attorneys, though attorneys "with real estate experience" are eligible to serve, as are "District certified general real estate appraisers, District licensed residential real estate appraisers, certified public accountants, mortgage bankers, licensed District real estate brokers, or persons possessing significant real property experience." D.C. Code § 47-825.01 (a)(1)(A). In other words, BRPAA members would be qualified to decide disputes over a property's assessed value or its classification under D.C. Code § 47-813—that is, qualified to determine how, but not whether, a tax applies.

We do not agree with the trial court that the term "classification" must encompass exemption status "to avoid a circumstance where there would be no appeal from imposition of the tax." A taxpayer may dispute its liability for the possessory interest tax—an in personam tax—by filing an appeal with the Superior Court under D.C. Code § 47-3303, which authorizes appeals from "any personal

property . . . tax."[12]  Under D.C. Code § 47-3304, both the taxpayer and the District may appeal the Superior Court's decision to the Court of Appeals.  This scheme is at odds with D.C. Code § 47-825.01 (j-1), which empowers an "owner," but not the District, to appeal BRPAA decisions to the Superior Court.  It would be illogical if the District could appeal when the Superior Court determined a lessee's tax-exempt status but not when BRPAA made the same determination, with the choice of forum solely within the taxpayer's discretion.  This incongruity further indicates that BRPAA's jurisdiction does not include the legality of an assessment—only the amount.

We conclude that BRPAA exceeded its jurisdiction when it determined that 17M was exempt from assessment of the possessory interest tax.  The trial court then erred in deferring to BRPAA's decision on Tax Year 2007 because "[t]he purported exercise of jurisdiction beyond that conferred upon the agency by the legislature is *ultra vires* and a nullity."  *District Intown Props., Ltd. v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 680 A.2d 1373, 1379 (D.C. 1996).  "An administrative agency is a creature of statute and may not act in excess

---

[12]  17M does not agree that the possessory interest tax is a personal property tax, and therefore capable of being appealed under D.C. Code § 47-3303.  But the possessory interest tax is, in fact, a personal property tax, as the next section explains.

of its statutory authority." *Id.* "'When [the legislature] passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted.'" *President & Dirs. of Georgetown Coll. v. District of Columbia Bd. of Zoning Adjustment*, 837 A.2d 58, 68 (D.C. 2003) (brackets in original) (quoting *Stark v. Wickard*, 321 U.S. 288, 309 (1944)).

### III.   Whether the Lease Agreement Bars Imposition of the Tax[13]

"Decisions of the Superior Court in civil tax cases are reviewable in the same manner as other decisions of the court in civil cases tried without a jury." D.C. Code § 47-3304.  We review a grant of summary judgment de novo, applying the same standard as the trial judge.  *1137 19th St. Associates, Ltd. P'ship v. District of Columbia*, 769 A.2d 155, 161 (D.C. 2001).  Summary judgment may be granted only if "there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law."  *Id.* (quotation marks omitted).  We follow "an 'objective' law of contracts, meaning 'the written

---

[13]   Because the trial court heard arguments from both parties on the merits and "further ordered," "pursuant to D.C. Code § 47-1005.01 (c)(2)," that 17M was exempt from the tax, we reject 17M's argument that the court did not rule on the merits.  We also reject 17M's claim that the trial court lacked "jurisdiction" over the merits.  17M cited D.C. Code § 47-3303 as a basis for jurisdiction in its petition in the Superior Court; that provision directs the court to "hear and determine all questions arising on appeal."

language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake.'" *Dyer v. Bilaal*, 983 A.2d 349, 354-355 (D.C. 2009) (quoting *DSP Venture Grp., Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003)).

As noted, the statute prohibits the District from imposing the possessory interest tax when doing so "would cause the District of Columbia to breach a pre-existing agreement or other legal obligation." D.C. Code § 47-1005.01 (c)(2). In this case, according to 17M, that "pre-existing agreement" is Section 19.02 of the Lease Agreement, entitled "New Taxes on Improvements," which provides that 17M "shall . . . pay any new tax of a nature not presently in effect but which may be hereafter levied, assessed, or imposed upon the District or the Demised Premises, if such tax shall be based on or arise out of the ownership, use or operation of the Improvements." 17M reads "if" in this section as "only if" and argues that "17M is only responsible for the tax if it is 'based on or arise[s] out of the ownership, use or operation of the Improvements.'" 17M further contends— and the District appears not to dispute —that the possessory interest tax does not "arise out of the ownership, use or operation of the Improvements" because it "applies to 17M's interest in the *land* underlying the Improvements, not [to] the

Improvements" themselves.

The District argues that "if" may not properly be read as "only if" but says that we need not reach that issue because Section 19.02 is simply inapplicable. In the view of the District, Section 19.02 addresses new taxes "imposed upon the District or the Demised Premises," whereas the possessory interest tax is "imposed upon 17M." 17M responds that the possessory interest tax is, in fact, imposed upon the "Demised Premises." The parties thus frame the issue in similar terms: If the "Demised Premises," as defined in the Lease Agreement, do not include the possessory interests taxed under D.C. Code § 47-1005.01 (b), then Section 19.02 does not apply. And if Section 19.02 does not apply, then no "pre-existing agreement" prohibits imposition of the tax.

The possessory interests taxed under D.C. Code § 47-1005.01 (b) consist of "the leasehold interest, possessory interest, beneficial interest, or beneficial use of the lessee or user of the real property." D.C. Code § 47-1005.01 (b). The Lease Agreement defines the Demised Premises as the District-owned land, "the improvements, ways, easements, air and surface rights . . . appertaining" that land, and "all the estate, right, title, interest and claims, either at law or in equity, or otherwise whatsoever, of the District in, to or out of said parcels of land." 17M interprets this definition to mean that the District demised "all 'estates' or

'interests' the District had in the underlying land" to 17M and "[t]hus, any 'estate' or 'interest' 17M has in the District owned land is by definition part of the 'Demised Premises.'" 17M contends that its possessory interests "must necessarily be part of the 'Demised Premises' since the only rights 17M has in this land are those that were demised by the District in the Lease Agreement." The District claims that it could not have demised—that is, leased—the possessory interests of 17M when it demised the interests "of the District."

Our common law and statutory law dictate that a lessee's possessory interest, although an interest in *real* property, is ultimately a species of *personal* property.[14] "[T]here can be no question under the common law in force in this District that a leasehold interest in lands is personal property." *Bean v. Reynolds*, 15 App. D.C. 125, 130 (D.C. Cir. 1899). The common law was codified in the 1901 Code of the District of Columbia and is now codified at D.C. Code § 42-504, which states that "estates for years shall be chattels real." "A 'chattel real' is an interest in real estate having the character of immobility, which is less than a

---

[14] Our decision in *1137 19th Street Associates, Ltd. Partnership v. District of Columbia*, 769 A.2d 155, 169 (D.C. 2001), that "a lease is 'real property' for purposes of the [Tax Recordation] Act," is not to the contrary. We decided that case based on the Act's own definition of "real property," which "broadly includes 'every estate or right . . . in lands, tenements, or hereditaments located in whole or in part within the District.'" *Id.* at 168 (quoting D.C. Code § 45-921 (4) (1981)).

freehold and is personal property." 63C Am. Jur. 2d Property § 20.[15]

The possessory interest tax at issue here, in which the assessment "shall be a personal liability of a lessee or user of real property" and "shall not give rise to a lien against the real property," D.C. Code § 47-1005.01 (f)(3), resembles the state "tax on private lessees and users of tax-exempt property who use such property in a business conducted for profit" that the Supreme Court upheld in *United States v. City of Detroit*, 355 U.S. 466, 469 (1958). The Court explained that "[a]ny taxes due under the statute are the personal obligation of the private lessee or user," and that "[t]he owner is not liable for their payment nor is the property itself subject to any lien if they remain unpaid." *Id.* "A tax for the beneficial use of property, as distinguished from a tax on the property itself, has long been a commonplace in this country." *Id.* at 470; *see also United States v. New Mexico*, 455 U.S. 720, 732 (1982). Like the possessory interest in this case, the possessory interest taxed in *City of Detroit* was no less the personal property of the lessee simply because it

---

[15] *See also* BLACK'S LAW DICTIONARY 286 (10th ed. 2014) ("The most important chattel real is an estate for years in land, which is considered a chattel because it lacks the indefiniteness of time essential to real property."); 73 C.J.S. Property § 34 ("'Personal property' includes 'chattels real,' which are property interests arising out of, or dependent on, real estate. . . . 'Chattels real' are to be distinguished on the one hand from things which have no concern with the realty, such as mere movables and rights connected with them, which are 'chattels personal,' and on the other hand from a freehold, which is realty.").

was "measured by the value of the property."[16] 355 U.S. at 470.

Because a lessee's possessory interest in property is a species of personal property, we read the "leasehold interest, possessory interest, beneficial interest, or beneficial use of the lessee or user of the real property," D.C. Code § 47-1005.01 (b), as distinct from the interests "of the District" that the District conveyed to 17M as part of the Demised Premises. The District could not have demised 17M's possessory interest to 17M as the District did not have 17M's possessory interest to demise; it had, instead, only its own. Thus in describing 17M's liability for new taxes imposed on the District or the Demised Premises, Section 19.02 does not control 17M's liability for its own possessory interest and beneficial use of the Demised Premises. The Lease Agreement, in addition, does not indicate that 17M would only be liable for expressly authorized taxes. *Cf. District of Columbia v. Cato Inst.*, 829 A.2d 237, 240 (D.C. 2003) (explaining with respect to real property taxes that it is "'firmly established'" that "'exemptions from taxation are to be construed strictly against the party claiming an exemption'" (quoting *Nat'l Med. Ass'n v. District of Columbia*, 611 A.2d 53, 55 (D.C. 1992))).

---

[16] In *City of Detroit*, the Supreme Court reasoned that "it seems obvious enough that use of exempt property is worth as much as use of comparable taxed property during the same interval" and concluded that "it was not an impermissible subterfuge but a permissible exercise of its taxing power for Michigan to compute its tax by the value of the property used." 355 U.S. at 470.

We conclude that the trial court erred when it granted summary judgment to 17M on the ground that assessing the possessory interest tax against 17M "would cause the District of Columbia to breach a pre-existing agreement or other legal obligation." D.C. Code § 47-1005.01 (c)(2). The judgment of the Superior Court is reversed and the case is remanded for proceedings consistent with this opinion.

*So ordered.*